**SOUTHERN COUNTY MUT. INS. CO. v. GREEN MOTOR CO. et al.**

No. 10015.

Court of Civil Appeals of Texas. Austin.

April 9, 1952.

Rehearing Denied April 30, 1952.

H. S. Beard, Pat Beard, Waco, for appellant.

Charles C. Smith, Jr., Cameron, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment of the 20th Judicial District Court of Milam County, Texas, sitting without a jury, rendered on the 12th of June, 1951, in favor of appellees, Green Motor Company and Bobbie Bradley, against appellant, Southern County Mutual Insurance Company, for $1,595, growing out of a suit for damage to Bradley's 1948 Chrysler automobile, caused by a collision and upset.

. The appellant appeals from the award of excessive damages to the appellees.

The questions presented are:

"1. Did plaintiffs' testimony that the wrecked automobile was worthless except to a junk dealer and that the repair costs were greater than the value of the automobile before the accident justify the trial court in determining that the value of the wrecked automobile was $00.00?

"2. Are plaintiffs required to offer proof of the value of the automobile after the accident, as well as the value before the accident, in a suit to recover on an insurance contract?"

The proposition is urged by the appellant that the plaintiff failed to satisfy the burden of proof in that they offered no evidence from which the court could determine the value of the automobile immediately after the accident.

The witness Green testifying in behalf of plaintiffs testified in part as follows:

"Q. * * * Now, Mr. Green, you have testified that in . company with Mr. Glenn, a representative of the Kizer Adjustment firm of Waco, you went to Goldthwaite, Texas, and examined and investigated this car. Based on your experience as a dealer in used cars, will you please state the amount and extent of damage to the car and the approximate market—cash market value? A. Cash market value was approximately $1695; that is—

"Q. I mean after the collision? A. Oh, after the collision it would be

worthless to anybody except a junk dealer.

"Q. And what is your basis for that testimony? A. Well, our estimates on putting the car back in shape would run approximately two thousand dollars."

Mr. Green was cross-examined by the attorney for the defendant who did not direct questions concerning the value of the car other than as to mileage on the car.

The plaintiffs alleged:

"On or about the 4th day of June 1950, and during the policy period of said policy, and while the same was in full force and effect, the above said automobile was damaged beyond repair in a collision and upset, and was totally destroyed, and is now a total loss. Immediately prior to the time of said damage and loss said automobile had a reasonable cash market value at Cameron, Texas, of $1,800; and immediately thereafter said automobile had a reasonable cash market value at Cameron, Texas, of $00.00, and defendant, by virtue of the herein described policy and contract of insurance is liable to plaintiffs for said damage or loss in the sum of the difference, to-wit, $1,800, less $100.00 deductible by reason of the terms of said policy."

We recognize that the measure of damages generally is the difference in market value of the automobile just before and immediately after collision, but if the action is based upon the loss of the property, the general standard fixed for the measure of damages is the value of the property destroyed or damaged.

International & G. N. R. R. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669.

In Thomas v. Goulette, 12 S.W.2d 829, 831, the Court of Civil Appeals (Eastland) held:

"* * * where the injury to an automobile does not amount to a practical destruction of the car, or, in other

words, where, after the injury, the car still has some value as such, the measure of damage is the difference in such value before and after the injury * * *."

In Pasadena State Bank v. Isaac, Tex., 228 S.W.2d 127, 128, Justice Harvey, writing for the Supreme Court, said, after reciting the general rule for measuring damages to personal property:

"Different factual situations, however, sometimes require a somewhat different yardstick to measure damages than the one just set out. For instance, a chattel might be totally destroyed; also, it is conceivable that the personal property destroyed might not have a market value."

We believe that the plaintiff, having made out a prima facie case that the automobile had no value except as junk, it then became the obligation of the defendant to offer evidence that the wrecked car had a value other than junk if it desired to avail itself of such value.

Junk has been defined as:

"3. Old iron, glass, paper, cordage or other waste, which may be treated so as to be used again in some form; hence valueless refuse; trash to discard as worthless." Webster's New International Dictionary, Second Edition, p. 1347.

In Ex parte Scott, 130 Tex.Crim.R. 29, 91 S.W.2d 748, our Court of Criminal Appeals discussed the meaning of the word or term "junk."

We believe that the court did not err in rendering judgment for the value of the automobile and that the evidence supports the court's implied finding that the automobile was a total loss and had no value as such after the upset. Woodward v. Ortiz, Tex., 237 S.W.2d 286.

The judgment of the trial court is affirmed.

Affirmed.