**BRYAN TRACTOR & IMPLEMENT COMPANY, Appellant,**

v.

**Ed O. PAGEL, Appellee.**

No. 10237.

Court of Civil Appeals of Texas.

Austin.

Oct. 20, 1954.

Rehearing Denied Nov. 17, 1954.

Charles C. Smith, Jr., Cameron, for appellant.

Camp & Camp, Don G. Humble, Cameron, for appellee.

GRAY, Justice.

This cause was before this Court on an appeal from an interlocutory order overruling appellant's plea of privilege. Bryan Tractor & Implement Co. v. Pagel, Tex. Civ.App., 250 S.W.2d 605.

Appellee recovered judgment against appellant for $4000 damages allegedly resulting from the purchase by appellee of a Rust Cotton Picker from appellant for $5000. Appellee paid $1000 down and later executed a conditional sales contract for the balance. This contract was assigned by appellant to Pacific Finance Corporation and was paid by appellee prior to this suit.

Appellant's agents came to appellee's farm in Milam County and negotiated the sale of the cotton picker. These negotiations resulted in the execution by appellee of a purchase order dated May 28, 1951. The picker was delivered to appellee's farm on July 10, 1951, at which time he executed the conditional sales contract which contained a provision that "no warranties, express or implied, have been made by the seller unless endorsed hereon in writing."

Appellee alleged that it was represented to him that the picker would, under normal conditions, satisfactorily pick cotton in the vicinity of his farm; that such representations were fraudulently made, and that the picker was not capable of so picking cotton. He also alleged that the conditional sales contract was procured by fraud.

The sufficiency of the allegations of fraud are not here questioned.

Appellant, among other pleas, alleged that the provisions of the conditional sales contract precluded appellee from asserting a collateral warranty in parol.

Upon a jury trial the jury in answer to special issues made findings sustaining appellee's allegations of fraud, and found the reasonable value of the picker at the time of its purchase to be $1000.

Appellant here presents five points. These are to the effect that: (1) the jury's verdict is contrary to and is without support in the evidence; (2) appellee failed to prove an essential allegation of his theory of recovery but on the contrary made an admission of fact binding on him which destroyed such theory; (3) extrinsic evidence was not admissible to vary the terms of the written conditional sales contract which excluded warranties not endorsed thereon; (4) the representations alleged "and shown to have been made by appellant's agents to appellee, respecting capability of the picking machine," were speculations dependent on future conditions and events and cannot amount to fraud as a matter of law, and (5) there is no competent evidence of the reasonable value of the cotton picker at the time of its purchase by appellee.

Appellant groups points (1) and (2) and in its argument thereunder says that appellee's theory of recovery is that the cotton picker was represented to him as being capable under normal conditions of picking cotton satisfactorily in the vicinity of Milam County which representation was false. Appellant further says that the testimony shows the nonexistence of normal conditions in the vicinity of appellee's farm, and that appellee's testimony constitutes a binding admission by him which destroyed his theory of recovery.

On cross-examination appellee testified, in part as follows:

"Q. And can you attribute to the rain the fact that you didn't get an excellent crop? A. Well, yes.

"Q. As a matter of fact up there in the country in 1951 you had a very unusual condition to prevail, in that the timing of the rains led to the bools (sic) not opening fully, didn't it? A. Well, in spots, yes.

"Q. And yours was one of the spots too, wasn't it? A. Not to much.

"Q. And as a result of that situation, the cotton was not only hard to pick with a machine, but it was hard to pick by hand, wasn't it? A. Well, no.

"Q. I mean picking. I am not talking about pulling. A. Yes, it would have been hard to pick.

* * * * * *

"Q. Do you know the process by which the Rust cotton picker, and generally most of the other pickers, work? A. I know that it pulls it out, yes.

"Q. Well, it pulls it out of the boll, doesn't it? A. Yes.

"Q. It has a series of spindles that rotate and they become entangled in the cotton that is hanging out of the bolls, don't they? A. Yes.

"Q. And they pull it out and it is sucked up and blown back in a basket there? A. That is right.

"Q. That is the principal that is in the Rust cotton picker, isn't it? A. That is right.

* * * * * *

"Q. All right, let us assume that the bolls are not fully open due to the drought, therefore, the cotton is not hanging out fully, now, wouldn't you say, in your opinion, that the Rust cotton picker, or any other picker using the spindle, would pick less cotton under those conditions than it would under normal conditions? A. Yes."

Appellee testified as to the conversations had with appellant's agents, the representations and assurances made by them relative to the ability of the picker to pick cotton on his farm. He testified that such agents represented that the picker would pick ninety-five per cent of the cotton and that "it would pick any cotton that was pickable." He testified as to his use of the picker, its failure to pick cotton and the efforts of appellant's agents to make the picker pick cotton and the failure of such efforts.

Appellee and other witnesses testified that his cotton crop was normal or a little above normal; that the crop amounted to about one half bale per acre; that the picker left cotton on the stalks and on the ground and that "about thirty or thirty-five per cent of it was waste," and that what was left on the stalks and on the ground amounted to about one half of the cotton. He also said that he had to abandon using the picker.

Appellee also testified as to the conditions existing at the time he executed the conditional sales contract, the representations made to him as to what it was—merely a note and mortgage—and his reliance on the agent's representations.

In answer to special issues one and two the jury found that it was represented to appellee that the picker was capable, under normal conditions, of picking cotton satisfactorily in the vicinity of Milam County, and that such representation was false.

██ We think there was evidence before the jury in support of its conclusion that conditions were normal, and that the picker would not pick cotton under such conditions.

Appellant relies on appellee's testimony, (supra) and says it shows a drought condition existing in the vicinity of appellee's farm in 1951, for which reason conditions were not normal.

██ Even if we agree that appellant's testimony, quoted above, shows that the timing of the rains made his cotton hard to pick it does not establish abnormal conditions. Further we think that when appellee's testimony as a whole explaining the conditions existing on his farm is examined it cannot be said that it constitutes an admission binding on him that conditions on his farm were not normal. Certainly, his testimony is not positive and definite that such conditions were not normal. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569.

■ Appellee alleged that his execution of the conditional sales contract was procured by fraud and was permitted to testify as to statements and representations made to him at the time by appellant's agents.

On this phase of the case issues were submitted to the jury and were answered in favor of appellee. Under these pleadings extrinsic evidence was admissible in support of the plea of fraud. Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873.

■ The various representations of appellant's agents made to appellee relative to the ability of the picker to pick cotton under normal conditions were statements of the then existing ability of the picker to pick cotton and therefore statements of existing facts. Bryan Tractor and Implement Co. v. Pagel, supra.

The witness Carrol Green was called as a witness by appellee and testified on direct and cross-examination. He said that he was a dealer in farm implements and tractors in Milam County; that he was familiar with farming conditions there and the type of farming done in the vicinity of appellee's farm; that he had seen cotton pickers of various kinds including the Rust cotton picker; that in his dealings he had become acquainted with various trades and transactions on farm implements and cotton pickers of various makes, and that he was familiar with the principals by which the Rust cotton picker worked. He expressed the opinion that the reasonable value of the picker in question was $750 or $1000. The jury found such value to be $1000.

Appellant did not offer any witness to testify as to the value of the cotton picker.

■ The witness Green was shown to have some knowledge of cotton pickers generally, of farming conditions and types of farming in the vicinity in question and was advised as to the results of the operation of the picker in question. His testimony furnished the jury some information and guide by which to reach a conclusion as to the reasonable value of the cotton picker. Greenspun v. Greenspun, Tex. Civ.App., 211 S.W.2d 977, error ref. n. r. e.; Southern County Mut. Ins. Co. v. Green Motor Co., Tex.Civ.App., 248 S.W.2d 959, error ref. n. r. e.; McCormick & Ray, Texas Law of Evidence, Sec. 638, pp. 808–812.

The judgment of the trial court is affirmed.

Affirmed.