**E. G. HALL et al., Appellants,**

**v.**

**Frederick S. BROWN et al., Appellees.**

**No. 4388.**

Court of Civil Appeals of Texas.

Waco.

Jan. 6, 1966.

Ed Roy Simmons, Mexia, Golden, Croley, Howell, Johnson & Mizell, Bradford D. Corrigan, Jr., J. Ralph Howell, Jr., Dallas, for appellants.

Carl Cannon, Bradley & Geren, Groesbeck, for appellees.

WILSON, Justice.

Plaintiffs Brown and others sued defendants Hall and others seeking to recover title to and possession of gas pipelines, to establish a constructive trust upon the rights of the purchaser under a gas purchase contract, to recover damages for loss of use of gas produced and sold under that contract, and to obtain other relief. Judgment was rendered in favor of plaintiffs on a jury verdict for most of the relief sought. Descendants of C. L. Brown, deceased, who are beneficiaries under his will, with their spouses, are the parties. The wife of appellant Hall, daughter of Brown, is independent executrix of the latter's estate. The evidence shows Hall acted for his wife in the management of estate properties.

The petition alleged that Hall managed the estate properties and carried on enterprises in which Brown had been engaged, including management of oil, gas and pipeline interests. In December, 1962, as was pleaded, plaintiffs and defendants entered into a contract by which plaintiffs purchased and defendants sold the 60% interest of the latter in various properties of the estate for $240,000. Plaintiffs had been tendered the option of buying or selling on this basis. It was alleged the property purchased by them included specified pipe lines and the proceeds of sale of a drilling rig, which were not delivered; that Hall originally obtained from the Humble companies a gas contract on behalf of the estate, permitted it to be cancelled, and then acquired it in his own name. They prayed judgment for the "fair market value of all the natural gas taken from said well by defendants at a price of 27½ cents per thousand cubic feet." It was averred that it was falsely represented that the proceeds of the sale of the drilling rig had been included in assets purchased, but that defendants later claimed the proceeds constituted fourth quarter operating profits; that plaintiffs acted under a mistake of fact as to ownership of the pipelines; that defendants falsely represented these belonged to themselves, rather than to the estate, and it was

sought to impose a constructive trust thereon. Defendants pleaded that the statement of estate profits for distribution for the fourth quarter of 1962 was prepared in accordance with the 1962 contract of purchase and sale, i. e., as had been done in the past, and according to accepted accounting principles.

Plaintiffs pleaded that they were minors during the period involved; that the estate properties were operated by Hall "as a fiduciary for plaintiffs"; that they were induced to execute a pleaded release of all claims against the estate and the executrix by fraud and misrepresentation.

Notwithstanding plaintiffs' trial pleadings consume 35 transcript pages and the evidence exceeds 1000 pages, only six issues were submitted. To these the jury answered in effect: (1), (2) and (3) that at the time of signing the contract of purchase and sale specified portions of the pipelines in question "belonged to the estate of C. L. Brown, deceased"; (5) that when he negotiated the Humble gas contract Hall "stood in the relation of fiduciary toward the plaintiffs"; (6) that Hall "took unfair advantage" of the relationship in the Humble transaction. To issue 4, inquiring whether the statement of profits for distribution for the fourth quarter of 1962 "was prepared in accordance with" the sale contract, the jury answered, "No." No objections to the charge are presented.

We sustain appellants' points presenting contentions now to be discussed, and overrule the others.

■ Recovery under the Humble gas contract, and the pipeline and welding machine claims are barred by the pleaded written release executed by plaintiffs as a part of the contract of purchase and sale, it is contended by appellants. That contract consummated negotiations by which plaintiffs were afforded a choice of buying defendants' interests or selling their own in the estate properties on a fixed-price basis. They elected to buy, executing the release in which they acknowledged they had ex-

amined the books and records of the estate and the executrix. Although it was alleged plaintiffs were induced to execute the release by fraud, no issue relating to this allegation was submitted or requested. The judgment does not purport to set aside or reform the release or the contract of sale and purchase. Under Rule 279, Texas Rules of Civil Procedure, since no issue on this independent ground of recovery was submitted or requested, it was waived. Clark v. National Life & Acc. Ins. Co., 145 Tex. 575, 200 S.W.2d 820; Dial Temp Air Conditioning Co. v. Faulhaber, Tex.Civ.App., 340 S.W.2d 82, writ ref. n. r. e.; Reed v. Beheler, Tex.Civ.App., 198 S.W.2d 625.

Plaintiffs pleaded that under the Humble gas purchase contract Hall acquired 168,110 MCF of gas at a rate of eleven cents for his own account and use, but it could have been re-sold (or used by the estate) for 27½ cents per MCF, alleged to be its fair market value, and plaintiffs thereby lost $27,738.15. Although the relief sought is intermingled in the pleading so that it is difficult to ascertain the theory ultimately relied on, plaintiffs prayed (1) that the Humble contract be assigned and awarded to them, (2) that a trust be imposed on the contract, or (3) that they recover judgment for damages. No issue was submitted or requested as to the market value of the gas. The charge contains no damage issue.

■■ It is sought to justify the omission by the contention the damages are undisputed. It is true the quantity of gas acquired under the contract is without dispute. The evidence as to value, however, does not establish the issue as a matter of law. It is true, as plaintiffs insist, that the court made a finding in the judgment that the gas could have been sold for 27½ cents per MCF, and rendered judgment for $27,738.15 as damages; but findings of fact by the court are not authorized where the judgment is based on jury findings, Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820, 822 and cases cited, except under the express provisions of Rule 279, Texas Rules of Civil Procedure. It is not suggested

that the issues submitted are necessarily referable, under that Rule, to the independent damage recovery ground, as distinguished from the others.

On the gas contract damage issue one of the plaintiffs testified as follows: "Q. Have you made an effort to ascertain what the reasonable cash market value or the going price of gas is in Limestone County, Texas? A. To what type of customer? Q. Well, to a commercial customer, or a retail customer, or to an industrial customer. A. To an industrial customer our gas sells for 27½ cents per thousand cubic feet. Q. What is the price to a domestic customer? A. To a domestic customer the first MCF of gas they purchase is $1.50—these are gross figures— then all over the first thousand is 77 cents gross, but if they pay by the 10th of the month they get a discount," the rates then being $1.35 and 70 cents. He testified there was a market for the gas in question, and he could have used it, "if it's handled right"; that "the Humble gas is a lower B. T.U., which is the amount of heat that a gas is capable of putting off," and if consumers "got a complete batch" of it, "regulators and things would not burn as well"; that it would be necessary to mix Humble and Freestone County gas in proper ratio in order to supply the Mexia State School from two fields. He described the system of lines, chokes, cut-offs, gauges and regulators which it would be necessary to construct to supply and sell such gas. There is no evidence as to the cost or expense of operating the equipment. Another witness testified to the necessity for running the gas "through a sweetener." The gas coming from the Ross Heirs B–1 well in question, he testified, "isn't what you'd call sweet gas. It still gives us lots of trouble on our engines from its rosy condition." A pipeline company cancelled its contract "because the gas was giving them lots of trouble in their engines." There was testimony that the gas "was so bad 'til we could only use it in our engines" and it was not satisfactory for domestic use because

of high sulphur and nitrogen content; that to get an industrial account it would be necessary to mix the gas. This evidence was controverted by plaintiffs.

Although the judgment allowed recovery by plaintiffs under a claim of damages based on alleged lost profits, there is no jury finding or evidence as to the cost or expense of sale, handling or distribution of the gas.

 "Profits are the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them." American Law Inst., Restatement, Contracts, Sec. 331(b). "Plaintiff is entitled to his net profits—not to his expected gross profits." Net profit is defined as the "gross amount that would have been received pursuant to the business or investment" less "the costs of running that business or attending that investment." 22 Am. Jur.2d, Damages, Sec. 178, p. 254. See 50 A.L.R. 1397. "In the calculation of net profits, allowance should be made for expenditures that the plaintiff would have been compelled to make." 17 Tex.Jur.2d, Damages, Sec. 144, p. 212. See id., Sec. 229, p. 290. It is not necessary that the data for estimating lost profits be established beyond reasonable certainty, City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W. 2d 243, but the basis for applying the net loss measure of damage may not be left entirely to conjecture. Thomas v. Basden & Carrell, Tex.Civ.App., 4 S.W.2d 336, 339, per Gallagher, C. J.

If the testimony of plaintiff on the market value issue be regarded as uncontradicted expert opinion testimony, as appellees insist, it is not, nevertheless, a basis for establishing value as a matter of law so as to preclude existence of a fact issue. Opinion testimony of an interested party as to value, even though uncontradicted, does no more than raise an issue of fact and "should be tested by the jury." Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 333, 334. See Fry v. Dixie Motor Coach Corpora-tion, 142 Tex. 589, 180 S.W.2d 135, 137, and cases cited.

On another trial the deposit in the registry relating to the subject matter of defendants' counterclaim should be offset against any recovery under the Humble contract claim in computation of interest. Various complaints of procedural errors are not clearly shown under the present record to constitute reversible error, and they will probably not recur on another trial. No objection or complaint that various issues submit conclusions, rather than ultimate fact issues, is presented. Appellees' cross-point is not briefed, and is therefore waived.

No complaint is presented concerning United States bonds recovered by plaintiffs, in paragraph (j) of the judgment, or the recovery of $6,594 in paragraphs (1) and (n). These items are severable. Appellate Procedure in Texas, Sec. 18.15. These portions of the judgment are severed and affirmed. The remainder of the judgment is reversed, and the cause remanded.