INTERNATIONAL HARVESTER COMPA-
NY and H & M Truck & Tractor
Co., Inc., Appellants,

v.

Ray KESEY and C. J. Kesey, Individually
and d/b/a Kesey Brothers, Appellees.

No. 6266.

Court of Civil Appeals of Texas,
El Paso.

Nov. 1, 1972.

Rehearing Denied Dec. 13, 1972.

Grambling, Mounce, Deffebach, Sims, Hardie & Galatzan, Malcolm Harris, El Paso, W. F. Leigh, Pecos, for appellants.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Alvin Walvoord, Jr., Midland, for appellees.

## OPINION

RAMSEY, Chief Justice.

Ray Kesey and C. J. Kesey, d/b/a Kesey Brothers, Plaintiffs-Appellees, filed suit against International Harvester Company and H & M Truck & Tractor Co., Inc., Defendants-Appellants, for damages resulting from alleged false representations in the sale of farm machinery. From a jury verdict in the total amount of $41,900.00, the Defendants have appealed. Reversed and rendered in part and in part affirmed.

The tractors involved were ordered by the Plaintiffs from Defendants on September 1, 1965, and were delivered as new equipment on December 1, 1965. The tractors were utilized for operating six row farm equipment. Plaintiffs experienced mechanical difficulties with the tractors, and brought suit to recover damages sustained by them based upon the representations made by the Defendants as to the suitability of the units for the type of work for which they were purchased. The damages awarded by the jury consisted of the sum of $35,000.00 against the Defendants, jointly and severally, for crop loss, $1,900.00 against both Defendants for excessive repairs, and $5,000.00 against International Harvester Company as exemplary damages.

■ Defendants assign ten points of error. The first point of error complains of the action of the trial Court in entering judgment in a suit that is barred by the two year statute of limitations, Art. 5526, Vernon's Ann.Tex.Civ.St. The only question to determine is the effective date for the commencement of the limitation period. Plaintiffs pled their cause of action based on fraudulent representations. This was found by the jury. The jury also found that the Plaintiffs first discovered, or by the exercise of ordinary care should have discovered, such representations were false, on April 1, 1968. The cause of action under Plaintiffs' theory would then have to be filed within two years of April 1, 1968.

Defendants contend that the tractors having been delivered on December 1, 1965, and the evidence shows by Plaintiffs' own testimony that trouble commenced within two weeks, and the additional fact that out of 43 repair tickets in evidence, 27

pertain to repairs performed more than two years prior to the time suit was filed, thus refutes jury's finding of the April 1, 1968 "discovery." Thus, the basis for Defendants' contention is that the evidence conclusively establishes, as a matter of law, that the matters complained of by the Plaintiffs were known to them more than two years prior to the institution of the suit, and is thus barred by the two year statute of limitation.

Throughout the period of time that the Plaintiffs used the tractors, the Defendants reassured Plaintiffs that the trouble could be corrected by repairs and continued their efforts to do so. Both parties testified that with any type of equipment some repairs would be anticipated. Finally, by letter dated March 28, 1968, the District Manager of International expressed surprise at the amount of service required and suggested that the Plaintiffs permit a demonstration of another type of equipment. Plaintiffs considered that by their conversation with the District Manager and the letter received that International had "given up" and Plaintiffs testified that at that time they concluded that the tractors would not perform.

In support of this point of error, Defendants rely on Bishop-Babcock-Becker Co. of Texas v. Jennings, 245 S.W. 104 (Tex.Civ.App. n.w.h.); Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908 (1907); and Richker et ux. v. United Gas Corporation et al., 436 S.W.2d 215 (Tex.Civ.App. writ ref'd n. r. e.) for the proposition that attempted repairs and subsequent assurances by the manufacturer or seller would not extend the statutory period provided for limitation of actions. It should be noted, and we so construe, that each of these cases was pled and tried on a contractual or breach of warranty theory rather than false or fraudulent representations which sounds in tort. The other two cases on which the Defendants rely are White v. Bond et al., 362 S.W.2d 295 (Tex.Sup.Ct.1962) and Pelton v. Trico Oil Co. et al., 167 S.W.2d 625 (Tex.Civ.App.

n.w.h.). These two cases appear to deal directly with the point of error involved. In White v. Bond et al., supra, no issue was submitted as to when the Plaintiffs should have discovered the fraud. The Court of Civil Appeals held in 355 S.W.2d 225 that the testimony did not show, as a matter of law, that the fraud should have been discovered. The Supreme Court held that the pleadings and the evidence conclusively showed that the Plaintiff had such knowledge of the facts "that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud." In Pelton v. Trico Oil Co. et al., supra, the Plaintiff himself testified as to his knowledge of the fraudulent representation more than two years prior to filing his cause of action. His delay in filing suit for six years was occasioned by promises that the matter of defective title would be cured, and that his failure to institute suit within the two year period barred his cause of action. The applicable rule is stated in Pelton v. Trico Oil Co. et al., supra, 167 S.W.2d on page 627, as follows:

"It is held under all Texas decisions that a cause of action sound in fraud and deceit is barred by the two years statute of limitation, and that limitation begins to run from the time the party defrauded or deceived knew of the fraud and deceit, or, by the exercise of reasonable diligence could have known of it."

A more recent discussion of the applicable rule is discussed in Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc., 351 S.W.2d 119 (Tex.Civ.App. writ ref'd n.r.e.) wherein the Court made a distinction in the rule "where there is a direct invasion of rights" as in medical malpractice cases. It should be noted that even in this respect, the Supreme Court has applied the same rule in medical malpractice cases as a radical departure from the long standing decision in Carrell et al. v. Denton, 138 Tex. 145, 157 S.W.2d 878 (Tex.Comm'n App.1942) and Stewart v. Janes, 393 S.W. 2d 428 (Tex.Civ.App., writ ref'd). See Gaddis et vir. v. Smith et al., 417 S.W.2d

577 (Tex.Sup.Ct.1967) wherein the applicable rule as to fraud is reiterated. We therefore overrule Defendants' first point of error.

Defendants' second point of error complains that the trial Court erred in entering judgment on the theory of misrepresentation since under the terms of the sale, the contractual obligation of the parties was, by its own terms, affected by a limited warranty which limits or restricts the liability of the manufacturer to the replacement or repairing defective parts during a specified time.

The Courts of this State recognize a limited warranty; and this Court has done so as recently as Lankford v. Rogers Ford Sales and Ford Motor Company, 478 S.W. 2d 248 (writ ref'd n.r.e.). Here, again, as above stated, the action is not based on breach of contract or warranty, but rather on alleged false or fraudulent representations, which sounds in tort. We are of the opinion that the rule now applicable in this State as to causes of action available is stated in Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W.2d 233 (1957), is as follows:

> " . . . for it is well settled that one who is induced by fraud to enter into a contract has his choice of remedies. 'He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid.' "

See also 26 Tex.Jur.2d, Sec. 78, pp. 17–18; Mack et al. v. Bradford, 359 S.W.2d 941 (Tex.Civ.App. writ dism'd); Dyer v. Caldcleugh & Powers et al., 392 S.W.2d 523 (Tex.Civ.App. writ ref'd n.r.e.). We therefore overrule point of error number two.

■ Defendants' points three, four and five complain of the trial Court's entry of judgment for the reason that Defendants contend that the representations made by the Defendants' representatives were noth-

ing more than "sales talk" or "puffing" rather than a false representation. To differentiate between sales talk and actionable misrepresentation can only be determined by the circumstances in the particular case. The Defendants rely on Zucht et al. v. Stewart Title Guaranty Co. et al., 207 S. W.2d 414 (Tex.Civ.App. writ dism'd) and Saunders v. Martin et al., 390 S.W.2d 513 (Tex.Civ.App. n.w.h.). Each of these cases involved representations as to quality and value of real estate and subsequent sales substantiated the represented value. A general statement as to the basic considerations in distinguishing between puffing and actionable misrepresentation is contained in 25 Tex.Jur.2d, Sec. 47, p. 689:

> "General commendations, commonly known as dealer's talk, seller's statements, or puffing, do not amount to actionable misrepresentations where the parties deal at arm's length and have equal means of information and are equally well qualified to judge the true facts. The law will not assist the purchaser who accepts exaggerated statements of value made by a vendor when he is in a position, as good as that of the vendor, to ascertain the truth of the assertions."

This concept is perhaps most graphically illustrated in Shaw Equipment Company v. Hoople Jordan Construction Company, Inc., et al., 428 S.W.2d 835 (Tex.Civ.App. n.w.h.) wherein the seller of road equipment in eulogizing his product represented to the purchaser that the machinery "would answer everybody's prayers in East Texas." The facts relating to the machinery showed that the purchaser had been using the identical piece of machinery for fourteen months under a lease purchase agreement and, thus, the purchaser himself knew better than the salesman the capabilities of the machinery in spite of the salesman's remarks.

In the case before this Court, the jury determined the representations to be false, but that the salesmen did not know of their

falsity at the time, but had represented a then existing fact which was false without knowing whether or not they were true. The jury's determination was undoubtedly influenced by a letter from the manufacturer's district manager, stating, "Frankly, we were somewhat surprised to see the amount of service you have needed on these tractors over the period of time you have used them." It would thus appear that the problems encountered by the Plaintiffs exceeded the expectations of the Defendant manufacturer. The representations made to the Plaintiffs regarding the ruggedness and dependability of the tractors and their capability to perform with six row apparatus was thus found by the jury to be a false representation of a then existing fact though the falsity was not known by the salesmen. The only ultimate determination to be made by this Court is whether or not such is actionable.

■■■■ Our Courts have long recognized actionable fraud to be divided into two categories, that is, first, actual and constructive fraud and, second, legal and equitable fraud. The jury by its answers determined the latter in this instance. The elements of actionable fraud are set forth in Bondies et ux. v. Glenn, 119 S.W.2d 1095 (Tex.Civ.App. writ dism'd). It is not necessary for the maker of a false representation to know of the falisty thereof to subject him to an action for actual damages. Monroe v. Mercer et al., 414 S.W.2d 756 (Tex.Civ.App. writ dism'd); Featherlax Corporation v. Chandler et al., 412 S.W.2d 783 (Tex.Civ.App. writ ref'd n.r.e.). We hold that such is actionable and overrule points of error three, four and five. See 25 Tex.Jur.2d, Sec. 6, p. 619; Dallas Farm Machinery Company v. Reaves, supra; Bryan Tractor & Implement Company v. Pagel, 272 S.W.2d 397 (Tex.Civ.App. writ ref'd n.r.e.); A. O. Smith Corporation v. Applewhite et ux., et al., D.C., 255 F.Supp. 785.

Points of error numbered six, seven and eight object to the entry of judgment for crop losses for the reasons that there was no evidence or insufficient evidence demonstrating any factual data upon which an award for damages could be calculated with any reasonable certainty and that the only evidence was an unsupported conclusion by Plaintiffs. In considering the "no evidence" and "insufficient evidence" points, this Court is governed by the principles set forth in Garza et al. v. Alviar et al., 395 S.W.2d 821 (Tex.Sup.Ct.1965).

Plaintiffs were operators of five farms totalling approximately 6,000 acres of which 1,600 to 2,100 acres were planted in cotton. They had been engaged in farming for some 25 years or more, and their present operation with irrigated farming had commenced in Reeves County about 1955. In 1965, Plaintiffs negotiated for the four tractors involved in an attempt to make their operations more economical. Plaintiffs' testimony emphasized the necessity for efficiency of farming operation in this area due to the nature of the soil and the fact that its preparation, planting and cultivation demanded a rather precise operation in order to utilize the water available for irrigation.

Plaintiffs testified to the numerous mechanical failures of the tractors which were substantiated by repair tickets. These incidents resulted in some 300 days down time of the four tractors. This is further substantiated by the letter from the District Manager of the Defendant International, above referred to. The repair order numbers, dates, days lost and amounts of repair were itemized and introduced in an exhibit.

Plaintiffs introduced testimony as to the effects of the breakdown. An exhibit was introduced showing cotton production in the year 1965 as compared with the three succeeding years revealing approximately 2,000 less bales of cotton produced, with the year 1967 emphasized as the best cotton year that that area had experienced in many years. Plaintiffs outlined the necessity for proper soil preparation in the

spring and that each step in the farming process was necessary to perform at the appropriate time to obtain the maximum result from the entire farming operation. Due to the breakdowns, land would have to be re-irrigated; tractor drivers would quit, land preparation and utilization would result in crops not being planted. Plaintiffs testified that in 1966 they were able to plant only three hundred acres of grain when they should have planted a thousand or twelve hundred acres. In addition to farming, Plaintiffs used the crops for grazing cattle so that a loss of some forty to fifty dollars per acre was experienced on grain in addition to its loss for grazing cattle.

Testimony was elicited as to the uncertainties of crop yield and profits to which farming operations are particularly susceptible including labor, weather, plant disease and insects. Plaintiffs, by their years of experience, represented themselves as knowledgeable of the probabilities of crop success or failure. The Court permitted Plaintiffs, over strenuous objection of Defendants' counsel, to testify that in their opinion the amount of damage to their crops resulting from the breakdowns of the tractors was over one hundred thousand dollars.

■ The generally acceptable rule as to proof of lost profits is stated in 17 Tex. Jur.2d, Sec. 229, p. 290. The authorities considering the quantum of proof necessary to sustain an award of such damage place the greater emphasis of certainty on the invasion of plaintiffs' rights and relax the rule as to the certainty of proof in accurately measuring the extent of damage. Hindman et al. v. Texas Lime Company et al., 157 Tex. 592, 305 S.W.2d 947 (1957); Osage Oil & Refining Co. v. Lee Farm Oil Co., 230 S.W. 518 (Tex.Civ.App. writ ref'd).

■ It is well settled that any recovery of damages must have evidence to support it and a conclusion of a witness not supported by evidence will not suffice to support a jury verdict. Harrell et al. v. F. H. Vahlsing, Inc., 248 S.W.2d 762 (Tex. Civ.App. writ ref'd n.r.e.); Texas & N. O. R. Co. v. Wood, 166 S.W.2d 141 (Tex.Civ. App. n.w.h.). Once the liability of the offending party is established, however, the inability of the offended party to accurately prove the amount of damages should not defeat his right to recover such amount as may be proved with reasonable certainty. Southwest Battery Corporation v. Owen et al., 131 Tex. 423, 115 S.W.2d 1097 (1938); City of La Grange v. Pieratt et ux., 142 Tex. 23, 175 S.W.2d 243 (1943). The Supreme Court in Hindman et al. v. Texas Lime Company et al., supra, recognized the rule set forth in Shannon v. Shaffer Oil & Refining Co. et al., 10 Cir., 51 F.2d 878, that where there is proof within the permissible range of certainty, that a right of a plaintiff has been invaded, he should not be denied a substantial recovery because of the difficulty in accurately measuring his damages. Plaintiffs' estimates are acceptable by these decisions when the evidence presents a reasonable basis for approximation.

■ We hold that the evidence presents a sufficient basis for Plaintiffs' approximation of their damages and that the finding of the jury is supported thereby and thus we overrule these points of error.

Point of error number nine complains of the Court's judgment for exemplary damages for the reason that there was no evidence of intentional fraud, bad faith or other conduct of Defendants which would support such an award. The jury, though finding that the representations made were false, further found that the Defendants in making such representations did not know them to be false, but had no knowledge of its truth and that such representations were recklessly made.

■ Even though the Court decisions and text writers use the word "reckless" in support of an award of exemplary damages, the measure of such conduct to support such an award must involve

conduct of an unconscionable nature, such as, malice, fraud, oppression, bad faith, knowledge of the falsity, intention to defraud, conscious indifference or wanton disregard of the rights of others. Erie Telegraph & Telephone Co. v. Kennedy, 80 Tex. 71, 15 S.W. 704 (1891); Stroud v. Pechacek et al., 120 S.W.2d 626 (Tex.Civ.App. n.w.h.); 17 Tex. Jur.2d, Sec. 178, pp. 245–248; 26 Tex. Jur.2d, Sec. 136, pp. 121–122; Baker v. Moody and Myer, 219 F.2d 368 (USCA, 5th, 1955); Coleman et al. v. Moore, 69 S. W.2d 552 (Tex.Civ.App. n.w.h.); Tynberg et al. v. Cohen et al., 76 Tex. 409, 13 S.W. 315 (1890). In carefully reviewing the entire record, even though the jury found that the representations were recklessly made, it cannot be concluded that the same were made in bad faith or that any of the attendant motivations appear as described in the above authorities. The conclusion would be to the contrary, since the Defendants, on being apprised of the difficulties, performed work and repairs on the machinery beyond their contractual warranty. We sustain Defendants' point of error nine for the reason that the evidence is not supportive of the exemplary damage award.

Point of error number ten has been considered and is overruled.

We therefore reverse and render that part of the judgment of the trial Court awarding exemplary damages in the amount of $5,000.00, and in all other respects the judgment of the trial Court is affirmed.

WARD, Justice (dissenting).

I respectfully dissent from the majority opinion permitting the recovery of $35,-000.00 crop damage to the Plaintiffs which is based solely on conjecture and on their bald and unsupported conclusion that they would "be very conservative and that they lost over a Hundred Thousand Dollars." When pressed as to his foundation for this figure, one of the Plaintiffs testified that "We know about what we can make in profit on grains and so on. We know what cotton brings and when you add all of this up, you can up to more than that figure." This data, this figure, the total production in terms of dollars and cents, the total expenses and the net profits for any preceding year, for the three years in question or for the two subsequent years for which figures were available, are not forthcoming. The damage to the Plaintiffs is claimed as being due to excessive breakdowns in the tractors resulting in losses in their short staple cotton, their Pima cotton and their grains. As to the short staple, the only figures available for the years 1965 through 1970 are the number of acres planted and the number of bales produced. Nothing is presented as to the Pima cotton. As to the grain, the only figure is that for the year 1966 they had only 300 acres planted when they should have 1,000 or 1,200 acres and that "anybody could make $40.00 or $50.00 an acre on grain." If this was the selling price, the gross or the net profit, we are not informed.

This was a large operation where careful books and records were kept. The testimony establishes that the government cotton subsidy granted each year to these Plaintiffs varied from $150,000.00 to $165,000.00. Yet there is no factual data to enable the fact finder to make an intelligent estimate of any loss. There was no evidence as to the price of cotton or any other crop in any year during either the years in question or during prior or subsequent years. There is no evidence as to the amount of cotton which the Plaintiffs claim should or would have been produced had the tractors been in service a higher percentage of the time or a greater number of days. There is no evidence as to the wages paid to idle laborers. There is no evidence as to the profits obtained in either previous or subsequent years. There is no evidence as to how production of the years in question compared to other farms in the vicinity. For all that is known, the

Plaintiffs could well have made a higher profit from their farming operations during the three years that they used the six row tractors than during the years when they were using the replaced seven four row tractors. This criticism of the evidence is particularly forceful in view of the Plaintiffs' admissions that while using the four tractors complained of they always got their full intended cotton acreage planted and that any time they had a farming operation to be performed, they got out and got the job completed in one manner or another. The criticism is considered also in light of their admission that their average crop yield was greater during the three full years that the equipment in question was used than during the succeeding two years when the new John Deere equipment was operated and further that in each of the years that the equipment in question was used, the Plaintiffs' per acre cotton yield exceeded the county average yield.

Evidence to establish profits must be certain and not speculative and while exact calculations are not required, it is necessary that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. Munke et al. v. Hubbard et al., 281 S.W.2d 165 (Tex.Civ.App.—Austin 1955, no writ); Southwest Battery Corporation v. Owen et al., 131 Tex. 423, 115 S.W.2d 1097 (1938); Hall et al. v. Brown et al., 398 S.W.2d 404 (Tex.Civ.App.—Waco 1966, no writ); 22 Am.Jur.2d, pp. 252–256. The vacuum presented to us is somewhat similar to the cases which have consistently denied future profits when the business is new and unestablished. As stated by Justice Pope in Atomic Fuel Extraction Corporation v. Slick's Estate et al., 386 S.W.2d 180 (Tex. Civ.App.—San Antonio 1964, writ ref'd n.

r.e. at 403 S.W.2d 784, with notation on another point), while discussing the Southwest Battery Corporation v. Owen et al., supra:

"That case explains that pre-existing profits, together with other facts and circumstances, may supply the reasonable certainty required both as to the fact of damages and the amount. The success of an enterprise, measured in profits, is dependent upon a multitude of risks, chances and circumstances; and without some history of profits there is inadequate data upon which to prove the fact of damages with the certainty required. A new and unestablished business without a profit record leaves too much to conjecture and speculation. * * * * In those Texas cases which have permitted recovery, there was some data and history of profits from an established business."

An exhaustive list of Texas Cases are therein cited.

Considering only the evidence which supports the jury verdict for $35,000.00 and only the facts and circumstances which tend to sustain it, I find no evidence to support the finding and would reverse and render the judgment of the trial Court in this regard. If I be mistaken in this, then I would sustain the Appellants' point Eight that the trial Court erred in overruling the Defendants' objection to the testimony of the Plaintiffs concerning the bald conclusion that the crop losses were over $100,000.00 and would remand this case for a new trial. This latter error amounted to such a denial of the rights of the Appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.