RIVERSIDE NATIONAL BANK et al., Appellants,

v.

James LEWIS, Appellee.

No. 17113.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 3, 1978.

Rehearing Denied Oct. 12, 1978.

Barrow, Bland & Rehmet, Charles J. Wilson, Kenneth C. Raney, Jr., Houston (On appeal only), for appellants.

Haynes & Fullenweider, Robert B. Wallis, Jan Woodward Fox, Houston, for appellee.

PEDEN, Justice.

Riverside National Bank and its former employee, Arthur Carroll, appeal from an adverse judgment in a suit filed by James Lewis based on the bank's refusal to honor its loan commitment. The jury found that the bank's refusal was malicious, amounted to wrongful dishonor of a draft, constituted fraud on the plaintiff, and violated the Texas Deceptive Trade Practices Act. The jury determined actual and punitive damages and fixed reasonable attorneys' fees. Although the jury found that Lewis gave false information in his loan application, it declined to find that such information was material or that the bank was justified in refusing to make the loan. The trial judge granted part of the defendants' motion for judgment n.o.v. in that he disregarded the jury's findings based on the Deceptive Trade Practices Act and those fixing attorneys' fees.

Appellants contend that the evidence was legally and factually insufficient to support the jury's failure to find that the false information on the loan application was material and say they proved conclusively that the bank's action was justified. Appellants also assert that there were no pleadings and no evidence or insufficient evidence to support the findings of wrongful dishonor, fraud, actual damages, punitive damages, the defendants' knowledge that damage would result, and malice. The appellee presents five cross-points, asserting error in the court's failure to enter judgment for treble damages and attorneys' fees on the jury's finding of a violation of the Deceptive Trade Practices Act. We reform the judgment and affirm.

In February, 1975, Lewis purchased a new Cadillac El Dorado. Allied Bank provided almost $10,500 in financing and accepted a security interest in the car and a $6,000 certificate of deposit of security. Lewis did not make the first payment, due on April 10, and a check he gave a few days later was returned for insufficient funds, so Mr. Little, Lewis' loan officer at Allied Bank, asked him to move the loan to another bank. Lewis was unsuccessful in attempts to obtain refinancing at two other lending institutions, then on May 2 he went to Riverside Bank, where Arthur Carroll helped him complete a loan application. Carroll told Little the bank was investigating the application. Some ten days later, Carroll called Lewis and told him the loan had been approved. Lewis signed the note on May 15, 1975. It is not clear why he did not execute security agreements at that time. He admitted that there are some incorrect entries on the application he filed with Riverside Bank. His average monthly income of $2,800 was not net income, as stated, but gross income, and his payment to Allied Bank was not due on May 10, as stated, but had been due since April 10. Lewis testified that he had told Carroll the figure given was gross income and that a

payment had been due on April 10 but that Carroll had told him to answer it as he did. Lewis testified that the first notice he had that the loan had not been funded was when Little at Allied Bank called him several days later. No one from Riverside ever did. Allied Bank repossessed the car on May 16 or 17 and it was sold at auction on June 3.

We review the testimony of Little. Carroll told him around the 1st or 2nd of May that Lewis had applied. On May 6 Carroll called, said the senior officer had a question on it but that the loan had been approved, and gave Little instructions on drafting the funds and forwarding car title and the C. D. After Little had followed those instructions, he called Carroll on May 14 to see why the draft had not been paid, and was told that it would be. When Little called again the next day and told Carroll he either wanted the draft paid or returned, Carroll said the loan had been approved and that a cashier's check was in the mail. Little called again on May 16, and this time was told that Riverside had declined the loan. Allied repossessed Lewis' car on May 16th or 17th and received the returned draft and documents from Riverside on May 21. When he reports to another bank about one of his loans, as he did to Riverside in this case, Little gives the due date of the first payment.

James Means, executive vice president at Riverside Bank, testified that he called Allied Bank on May 14 to determine the status of the note, then decided not to make the loan when he discovered it was delinquent and that he could not confirm Lewis' income. He said the loan had not been "formally denied" when Carroll had Lewis sign the note on the next day.

In addition to the usual definitions of proximate cause and ordinary care, the trial court submitted the following instructions:

"You are instructed that:

A representation of present or past fact is 'fraudulent' if it is false, the person making the representation knows it to be false and he intends another to rely upon it. A representation of future intent is 'fraudulent if the person making the representation has no present intent to do what he says he will do and he intends another to rely upon his representation.

"You are instructed that:

A 'Deceptive Trade Practice' is any false, misleading, or deceptive act or practice in any trade or commerce, including, but not limited to, the following acts:

1. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

3. advertising goods or services with intent not to sell them as advertised.

"You are instructed that:

An act is done with 'malice' if it involves ill will, evil motive, or reckless disregard for the rights of others. In a legal sense an unlawful act done willfully and purposely is, as against that person, malicious."

In response to special issues the jury found from a preponderance of the evidence:

1. That Riverside National Bank or its employee, Arthur Carroll, after agreeing to refinance the automobile of Plaintiff, James Lewis, knew or should have known that "such refusal" would result in the a) repossession of plaintiff's car, b) loss of his certificate of deposit and c) damage to his credit rating.

2. (predicated on affirmative answer to 1. a, b, or c) That such refusal was a proximate cause of any damage to James Lewis.

3. (predicated on affirmative answer to 1. a, b, or c) That such refusal was done with malice by either Riverside National Bank or Arthur Carroll.

4. That the refusal of Riverside National Bank to honor the draft of Allied Bank was a wrongful dishonor of it.

5. (predicated on affirmative answer to 4.) That such refusal was a proximate cause of some damage to James Lewis.

6. (predicated on affirmative answer to 4.) That such refusal was done with malice.

7. (predicated on affirmative answer to 1. a, b, or c or 4.) That such action constituted a fraud on James Lewis.

8. (predicated on affirmative answer to 1. a, b, c . or 4.) That such action was a violation of the "Deceptive Trade Practices Act."

9. (predicated on affirmative answer to 8.) That a reasonable attorney fee for James Lewis was

| | | |
|---|---|---|
| a. | for prosecution of this suit | $4,700. |
| b. | appeal to Court of Civil Appeals | 1,500. |
| c. | appeal to Texas Supreme Court | 500. |

10. That James Lewis gave false information on his application to Riverside National Bank.

11. (predicated on affirmative answer to 10.) The jury declined to find from a preponderance of the evidence that such false information was a material fact in Riverside Bank's agreeing to finance the car for James Lewis.

12. (predicated on affirmative answer to 11, so not answered.) This issue asked whether Riverside Bank relied on such false information in originally agreeing to make the loan.

13. The jury declined to find from a preponderance of the evidence that Riverside Bank was justified in refusing to make a loan and refusing to honor Allied Bank's draft.

14. The reasonable cash compensation for James Lewis would be:

| | | |
|---|---|---|
| a. | for loss of certificate of deposit | $3,177.50 |
| b. | for loss of use of car | 0 |
| c. | for injury to his credit rating | 100.00 |

15. James Lewis should be awarded $10,000 against Riverside Bank as exemplary damages. "Exemplary damages" means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages.

16. James Lewis should not be awarded any exemplary damages against Arthur Carroll.

"Exemplary damages" means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages.

The parties stipulated that any and all acts of Arthur Carroll which are the subject of this suit, whether indeed (sic) or by conversations, were made in the course and scope of his employment as a loan officer for the defendant, Riverside National Bank.

The defendants' (appellants') only objections to the trial court's charge were directed to the first nine special issues and were: 1) no pleadings to support submission, 2) no evidence, 3) insufficient evidence, and 4) an affirmative answer would be against the great weight of the evidence. They submitted no proposed definitions or instructions and no issues that were refused.

Appellants' Points of Error

Appellants' first two points of error assert that the jury's answer to Special Issue 11 established the defense of illegality because 18 U.S.C. § 1014 (1970) prohibits knowingly making false statements to influence the actions of a bank insured by the Federal Deposit Insurance Corporation in making a loan. Appellee argues that appellants did not plead, prove or obtain a jury finding on the illegality defense. Under Rule 94 of the Texas Rules of Civil Procedure, illegality must be affirmatively pleaded as a defense or it is waived. *Mabry v. Priester*, 161 Tex. 173, 338 S.W.2d 704, 706 (1960); *Van Huss v. Buchanan*, 508 S.W.2d 412, 414 (Tex.Civ.App.1974, writ dism.). Appellants pleaded that the information on Lewis' application was false. This pleading was sufficient to raise the question of illegality since appellee raised no special exceptions specifically pointing out the defect or omission. *Portwood v. Buckalew*, 521 S.W.2d 904, 919 (Tex.Civ.App.1975, writ ref., n. r. e.); Tex.Rules Civ.Proc., Rule 90. Appellants were not required to plead and

prove the federal law they were using to support their theory of illegality; a Texas court must take judicial notice of federal law. *Lyon Van Lines, Inc. v. Ogden*, 503 S.W.2d 632, 636 (Tex.Civ.App.1973, no writ).

■ The jury's answer to Special Issue 10 is that Lewis gave false information on his loan application, but defendants did not offer issues asking whether he did so knowingly and for the purpose of influencing in any way the action of the bank, findings that would be necessary to show a violation of 18 U.S.C. § 1014. By submission of issues 11 and 12 questioning the materiality of the information and the bank's reliance on it, the defendants apparently were submitting elements of fraud rather than of illegality. See *McCall v. Trucks of Texas, Inc.*, 535 S.W.2d 791, 794 (Tex.Civ.App.1976, writ ref., n. r. e.). Since the judgment was adverse to the appellants, we cannot deem the omitted issues as found in their favor under Rule 279, T.R.C.P. The defense of illegality was waived.

Appellants' third point of error is that the court erred in overruling their motion for judgment notwithstanding the verdict because the evidence proves conclusively that the bank was justified in refusing to make the loan and honor the draft, and that issue 13 (asking whether Riverside Bank was justified in refusing to lend) should not have been submitted. Appellants' position is that the bank could not have funded the loan without helping Lewis commit a crime. We overrule this point. Absent necessary findings that Lewis gave false information to the bank knowingly and for the purpose of influencing its action, we cannot agree with appellants' view.

■ Appellants argue in points four and five that they proved materiality of the false information as a matter of law or that the jury's failure to find materiality in issue 11 was against the great weight and preponderance of the evidence. Appellants cite *U. S. v. Braverman*, 522 F.2d 218, 223

(7th Cir. 1975) for this definition of a material fact: "A statement concerns a material fact when it has the 'capacity to influence' the lending institution." This is the proper definition for materiality under the federal criminal statute discussed above, but materiality in an action for fraud depends upon whether the contract would have been made notwithstanding the representations. *Connor v. Buckley*, 380 S.W.2d 722, 724 (Tex.Civ.App.1964, no writ); 25 Tex.Jur.2d 630, Fraud and Deceit § 15. No instruction or definition was submitted with the issue.

■ Mr. Means of Riverside Bank admitted that Lewis signed the note on May 15 after Means knew of the delinquency of the Allied note and had decided on May 14 not to make the loan. Lewis testified that when he applied for the loan he told Carroll of the delinquency, but Carroll said that with only one missed payment he thought he could help. The jury may have accepted that testimony, could have considered the amount of security for the loan and was entitled to conclude that the defendants had failed to sustain their burden of proof on issue 11.

■ We agree with the appellants' position stated in points 6 and 8 that there were no pleadings and there was no evidence to support the submission of issue 4 (asking whether the refusal of Riverside Bank to honor the draft of Allied Bank was a wrongful dishonor). The plaintiff's petition specifically listed four causes of action against the defendants, but none of them gave the defendants fair notice of a wrongful dishonor theory of recovery.[1]

■ Further, the evidentiary support was lacking. The basis for a wrongful dishonor claim is § 4.402 of the Texas Business and Commerce Code. It provides: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item . . ." § 4.104(a)(5) defines "customer as 'any per-

---

1. The causes of action alleged were: 1) breach of a binding written contract (the promissory note), 2) violations of the Deceptive Trade Practices and Consumer Protection Act, 3) in-

tentional refusal to complete the contract while holding the plaintiff's executed note amounts to conversion, and 4) intentional refusal to complete the contract amounts to fraud.

son having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank.'" This statute obligates a bank (unless it has a lawful excuse to dishonor) to honor drafts drawn on its customer's account if the account has sufficient funds. *Baytown State Bank v. Don McMillian Leasing Co.,* 551 S.W.2d 771 (Tex. Civ.App.1977, writ ref. n. r. e.). In our case the plaintiff, Lewis, was not a customer of Riverside Bank so Riverside Bank was not liable to him under Section 4.402 for having dishonored the draft of Allied Bank.

In points of error nine and ten, appellants assert that there is no evidence or sufficient evidence on which the jury could find, in response to issue 7, that the refusal to refinance or refusal to honor the draft constituted a fraud on Lewis. The instruction given on fraud was: "A representation of future intent is 'fraudulent' if the person making the representation has no present intent to do what he says he will do and he intends another to rely upon his representation."

 Lewis testified that Carroll told him the loan had been approved, so he went to the bank and signed the note on May 15. Means testified that he did not know why Carroll asked Lewis to sign the note a day after Means had decided to refuse the loan. This evidence shows that Riverside Bank had no present intent to make the loan when it represented to Lewis, through Carroll, that it would do so. This is sufficient evidence to meet the court's instruction on fraud. Appellants did not object to the instruction or offer any additional instructions for submission. The elements of actionable fraud are 1) that a material representation was made; 2) that it was false; 3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; 4) that he made it intending that it should be acted upon by the other party; 5) that the party acted in reliance upon it; and 6) that he suffered thereby. *Custom Leasing, Inc. v. Texas Bank and Trust Co. of Dallas,* 516 S.W.2d 138 (Tex.1974). These

elements were established in our case by undisputed evidence or by jury findings. In any event, the submission of a corrected definition was waived by failure to object to the one given and the submission of additional definitions or instructions was waived by failure to request them in substantially correct form. Rules 274 and 279, T.R.C.P.

 In points 11 and 12, appellants argue that the record contains no evidence or insufficient evidence to support the findings (in issue 14) that Lewis incurred actual damages of $3,177.50 for the loss of his C. D. and $100 for injury to his credit rating. Plaintiff's exhibit 8 is the check Lewis received from Allied Bank for the remainder of his $6,000 C. D. The check of $2,812.50 represents $6,000 minus the $3,187.50 deficiency remaining on the note after applying the proceeds from the car sale. Omitting loss of interest by Lewis, the jury's answer 14a should have been $3,187.50 instead of $3,177.50. This $10 error in arithmetic should be corrected in the judgment. The $100 awarded Lewis for injury to his credit rating is supported by Lewis' testimony that repossession of a car damages one's credit rating. We do not agree with the appellants' position that the plaintiff was shown to have not been damaged by the fact that he was unable to save his car by refinancing it during the 17-day period between its repossession and its sale. The jury was also entitled to consider that the car had by then been repossessed and its owner's credit rating thus damaged. The defendants did not object to the absence of an instruction or issue concerning whether special or consequential damages, such as loss of credit rating and loss of part of the funds in the C. D., were within the contemplation of the parties when the agreement was made, so they waived submission of them. · Rules 274 and 279.

Appellants' points 13 and 14 attack the award of $10,000 in exemplary damages as unsupported by legally and factually sufficient evidence. Appellants argue that to obtain exemplary damages a plaintiff must show that the (1) wrongful dishonor (2)

intentional fraud or (3) breach of contract coincident with fraud was done maliciously. Points of error 18 through 23 also contest the sufficiency of the evidence and pleadings to support the submission of issues 3 and 6 and the jury findings of malice in response to those issues.

Although there is little dispute in the testimony, different inferences may be drawn from it. Mr. Carroll did not testify, so what he said and did in the plaintiff's presence are reported only by the plaintiff. It is clear that Carroll assured the plaintiff that the loan had been granted, had him sign the note, and told Allied Bank the funds had been forwarded even though his superior, Mr. Means, had already decided to deny the loan. It has not been shown, however, that anyone at Riverside Bank consciously misled Lewis, had anything to gain by misleading him, had any desire to harm him, or had any evil intent or bad faith, but what appears to have been a lack of communications between Carroll and Means resulted in the plaintiff's being unable to avoid a monetary loss.

■■■ After carefully reviewing the entire record we cannot say the evidence supports the jury findings of malice or its award of exemplary damages. Even though the decisions use the word "reckless" in support of an award for exemplary damages, the measure of the conduct to support such an award must involve acts of an unconscionable nature, such as malice, fraud, oppression, bad faith, knowledge of the falsity, intention to defraud, conscious indifference or wanton disregard of the rights of others. *International Harvester Co. v. Kesey*, 487 S.W.2d 799 (Tex.Civ.App. 1972, reversed on other grounds, 507 S.W.2d 195). See also *A. L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629 (1943). We will not treat this matter further in view of our subsequent holdings that 1) Lewis is entitled to recover under the Deceptive Trade Practices Act, and 2) he is not entitled to recover both punitive and treble damages.

*Appellee's Cross-Points of Error*

Appellee's cross-points attack the trial court's granting of appellants' motion to set aside jury finding 8, that the refusal of the loan after agreeing to it was a violation of the Texas Deceptive Trade Practices Act (DTPA). Defendants' motion alleged that there was no evidence to support the issue. The basic question before us is whether the DTPA applies to a bank's agreement to extend credit. Apparently this is a case of first impression in Texas. The pertinent provisions of the Act during May and June of 1975 were:

§ 17.50

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

§ 17.46

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

\* \* \* \* \* \*

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

\* \* \* \* \* \*

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;

\* \* \* \* \* \*

(9) advertising goods or services with intent not to sell them as advertised;

§ 17.45

As used in this subchapter:

(1) "Goods" means tangible chattels bought for use.

(2) "Services" means work, labor, and services for other than commercial or business use, including services fur-

nished in connection with the sale or repair of goods.

\* \* \* \* \* \*

(4) "Consumer" means an individual who seeks or acquires by purchase or lease, any goods or services.

\* \* \* \* \* \*

(6) "Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

§ 17.44

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

Under the provisions of the Act and under the facts and instructions in this case, Lewis was a consumer if he sought to purchase services for other than commercial or business use; a consumer may maintain an action if he has been adversely affected by the use or employment of any false, misleading or deceptive act or practice in the conduct of any trade or commerce. The jury was charged as to three specific deceptive trade practices from the § 17.46 "laundry list," but we hold that the evidence does not show that any of them apply to this case. § 17.46(b) clearly provides, however, that the term "false, misleading or deceptive acts or practices" includes, but is not limited to the listed acts.

In the recent case of *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), this definition of "services" was cited with approval: "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object."

We consider that by seeking to obtain the extension of credit from a bank, Lewis was seeking to purchase services and was, under the provisions of § 17.45, a consumer.

In our case the jury found (issue 1) that Riverside Bank or Carroll, after agreeing to refinance the Lewis car, knew or should have known that "such" refusal would result in a) repossession of it, b) loss of his C. D., and c) damage to his credit rating. The jury also found, under issue 8, that "such action" was a violation of the Deceptive Trade Practices Act.

We hold that these two findings plus the finding to issue 7 (that such action constituted a fraud on Lewis) were supported by the evidence in this case and that they support a judgment under § 17.46 that he has been adversely affected by a false, misleading, or deceptive act. Since the act in question was not one specifically listed as a deceptive trade practice under § 17.46(b), the issues in our case properly inquired whether 1) the act or practice occurred and 2) it was a deceptive trade practice. *Spradling v. Williams,* 566 S.W.2d 561 (Tex. 1978).

§ 17.43 of the DTPA states that the remedies provided in that subchapter are in addition to any other procedures or remedies provided for in any other law. We hold that a plaintiff should not, however, recover both exemplary damages and the treble damages provided in the DTPA, based on the same act, as that would amount, at least in part, to a double recovery of exemplary damages. "Treble damages effectuate one of two possible purposes. First, mandatory treble damages served as inducements for the consumer to sue where smaller damages are involved. Second, they serve as exemplary damages to punish the wrongdoer for his misconduct." Comment, 30 Baylor Law Review 65, 73 (1978).

The plaintiff has elected, in the event election of remedies is required, to recover treble actual damages plus attorneys' fees and costs.

The judgment of the trial court is reformed to provide that the plaintiff's recovery from the defendants, jointly and severally, shall consist of his trebled actual damages in the amount of $9,862.50 plus attorneys' fees of $6,700 and costs of court. Provided, however, that in the event this cause is not appealed to the Texas Supreme Court, the award of attorneys' fees will be reduced by a $500 remittitur. As thus reformed, the judgment of the trial court is affirmed.