**ALLSTATE INSURANCE COMPANY and Spencer Miller, Appellants,**

v.

**Sandra KELLY, Willie W. Alves, and Carroll B. Alves, Appellees.**

No. 12–82–0057–CV.

Court of Appeals of Texas, Tyler.

Oct. 31, 1984.

Royal H. Brin, Jr., A.D. Bynum, Dallas, for appellants.

Jerry Calhoon, Richard E. Swift, Jr., Swift, Swift & Lawrence, Palestine, Russell H. McMains, Edwards & Perry, Corpus Christi, John O'Quinn, Houston, for appellees.

COLLEY, Justice.

This is an appeal from a judgment rendered in favor of the insured against the insurer in a *Stowers* Doctrine case.[1]

On April 21, 1978, in Anderson County, a collision occurred between a vehicle operated by Willie W. Alves and a vehicle operated by George Veevers in which Sandra Kelly was a rear-seat passenger. As a result of the collision, Kelly received serious injuries. A negligence action was filed on behalf of Kelly by Jerry Calhoon, a Palestine lawyer. This suit went to trial on April 2, 1979, and on April 20, 1979, judgment was rendered on a jury verdict in favor of Kelly against Willie W. Alves for $521,453.57. No appeal was perfected from the judgment, and it became final and

nonappealable before June 27, 1979. At the time of the collision, Alves was an insured in an automobile liability insurance policy issued by Allstate with bodily injury liability limits of $50,000 per person and $100,000 per occurrence. It is undisputed that the liability policy contained provisions triggering the application of the rule in *Stowers*. On February 22, 1979, Allstate paid into the registry of the Anderson County District Court its policy limits of $50,000 by draft payable to the order of the District Clerk for the benefit of Sandra Kelly. On June 27, 1979, these funds were, on motion of Sandra Kelly and order of the trial court, disbursed by the Clerk to Kelly and her lawyer, Jerry Calhoon.

After receiving a demand letter, presumably under the Deceptive Trade Practices Act, from Alves' attorney, Dick Swift of Palestine, Allstate and Spencer Miller, its field adjuster, filed on November 9, 1979, a petition in this suit in the 241st Judicial District Court of Smith County for a declaratory judgment, naming Sandra Kelly, Carroll B. Alves and Willie W. Alves as defendants. The Smith County District Court sustained pleas of privilege filed in behalf of all of the defendants, and the cause was transferred to the Anderson County District Court. Each defendant filed counterclaims. Alves' counterclaim asserted a cause of action against Allstate and Miller alleging negligence in failing to settle Kelly's claim within the policy limits and by refusing to accept an offer of settlement made in writing by Jerry Calhoon, attorney for Sandra Kelly. Alves also sought exemplary damages and treble damages under TEX.INS.CODE ANN. art. 21.-21 Section 16 (Vernon 1981) and the Deceptive Trade Practices Act, hereinafter referred to as DTPA. The case was tried to a jury, and based on the jury's answers, judgment was rendered in favor of Alves and Kelly against Allstate and Miller for $582,413.12, jointly and severally, and against Allstate for $800,000 in punitive

---

1. *G.A. Stowers Furniture Co. v. American Indemnity Company,* 15 S.W.2d 544 (Tex.Comm'n App. 1929, holdings approved).

damages and for $1,164,826.24 as treble damages.

Allstate presents fifteen points of error, claiming the trial court erred in awarding both punitive and treble damages; in admitting over objection opinion testimony as to the state of the law and as to the ultimate fact issues before the jury; in permitting a post-verdict trial amendment enlarging the amount of exemplary damages pleaded; in refusing to permit Allstate to call opposing trial counsel (Dick Swift) under the adverse party rule; in disregarding the answers to certain special issues; in trebling post-judgment interest on the personal injury judgment rendered against Alves in favor of Kelly as actual damages; and in permitting testimony over its objection as to the financial difficulties of Kelly. Allstate also asserts that the evidence adduced at trial reveals as a matter of law that neither Allstate nor Miller was guilty of negligence or gross negligence in failing to settle Kelly's claim within policy limits. Alternatively, Allstate asserts that the jury's findings of failure to settle were against the great weight of the evidence, and that there is no evidence to support the award of treble damages, or alternatively, the evidence is insufficient to support such award.

We reform the judgment by striking the award of exemplary damages, and as reformed, we affirm the judgment.

Because of the novelty and complexity of the issues presented for decision in this appeal, we deem it necessary at the outset to discuss in some detail the facts shown by this record. In this opinion we shall refer to Allstate Insurance Company as Allstate; to Spencer Miller, Allstate's field adjuster, as Miller; to Willie W. Alves and her husband, Carroll B. Alves, as Alves; and Sandra Kelly as Kelly.

Shortly after the collision on April 21, 1978, between the vehicle driven by Alves and the vehicle in which Kelly was a passenger, Jerry Calhoon was employed by Kelly and her husband, Joe Kelly, to bring an action for the personal injuries sustained by Kelly in that collision. On April 26, 1978, Calhoon, on behalf of Joe and Sandra Kelly, wrote the Alves advising them of his employment as Joe and Sandra Kelly's attorney and advised Alves to forward the letter to their liability insurance carrier if they had one. This letter was relayed to Miller who, shortly after the receipt of same, contacted the Alves. Since Mrs. Alves had also been injured in the collision, she turned over to her husband, Carroll B. Alves, the responsibility of attending to the matter. In September 1978 Charles Clark, a Tyler attorney employed by Allstate to defend Alves against Kelly's claim, took the oral depositions of Kelly and Alves. Prior to such time, Miller had received from Calhoon copies of bills for medical and hospital expenses incurred by Kelly for care and treatment of the injuries she sustained in the collision. Such bills were in excess of $13,000. In September 1978 additional medical reports by Doctors Leo W. Mack, a Tyler Ophthalmologist, and Randall J. Donaldson, a Tyler surgeon, who performed surgery on Kelly on April 22, 1978, were furnished to Miller by Calhoon. These medical reports showed that Kelly, as a result of her injuries, lost sight in her right eye and suffered a 50% loss of the field of vision in her left eye. The deposition testimony revealed that Alves turned left in front of the automobile driven by George Veevers at an intersection not controlled by a traffic sign or signal.

As early as July 31, 1978, Miller requested authority from his superior, Bob Moss, claims supervisor for Allstate, to offer the policy limits of $50,000 to settle Kelly's claim. In fact, Miller, in a request for authorization, advised Moss that Kelly's attorney "has filed suit ... states he will try for a judgment against [insured]." Miller attached to the request medical bills and doctor reports on Kelly. Both Miller and Clark testified that Allstate had sufficient information, both as to the liability of its insured in the collision, and as to the extent of the injuries sustained by Kelly to evaluate her claim as obviously being in an amount in excess of the policy limits of $50,000 well before the settlement offer

was made by Kelly. After two requests were made by Miller to his superior for authority to offer policy limits to settle Kelly's claim, such authority was granted on November 9, 1978, by Dick Giles, Allstate's Texas Region Casualty Analyst. Miller testified that as early as July 1978 he had evaluated Kelly's claim, both as to liability and damages. He stated that he had concluded that the claim was unquestionably one far in excess of $50,000 and testified that he knew enough about the case to settle it within the fourteen-day time period of the settlement offer (hereinafter discussed) made by Kelly. On November 13, 1978, Calhoon, as authorized by his client Kelly, wrote Clark extending an offer to settle Kelly's claim for $50,000. That letter reads:

November 13, 1978

Mr. Charles H. Clark

Attorney At Law

Post Office Box 98

·Tyler, Texas 75710

Re: Sandra Kelly
 Vs.
 Willie Weiss Alves

Dear Charles:

Please be advised that my client, Sandra Kelly, has authorized me to extend herewith an offer to settle her claim against Mrs. Alves for $50,000.00. She has authorized me to leave this offer open for two (2) weeks from the date you receive this letter, after which my instructions are to withdraw the offer, and complete trial preparations. Accordingly, if your client wishes to accept this offer, please advise me within this time.

Very truly yours,

Jerry L. Calhoon

JLC:gm

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

cc: Mr. Spencer Miller
 Route 4, Box 109A
 Tyler, Texas 75703

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

cc: Mrs. Sandra Kelly

The letter was received by both Clark and Miller as of November 15, 1978. On November 22, 1978, Miller and Moss went to Clark's office in Tyler where Miller called Calhoon to discuss the written offer. Miller testified that he talked to Calhoon and offered to pay the $50,000 if Calhoon would provide Allstate with a release of claims signed by Joe Kelly. Miller testified that Calhoon advised him that he did not represent Joe Kelly and could not secure a release from him. In· effect, Miller testified that the settlement offer of Kelly was not accepted because Calhoon could not furnish a release signed by Joe Kelly, and that his supervisor Moss instructed him not to settle without the release from Joe Kelly. The record shows without dispute that neither Clark, Miller nor any other authorized representative of Allstate contacted the Alves to inform them of the settlement offer and of Allstate's rejection of the offer and the reasons for rejection until February, 1979.

Clark admitted on cross-examination that he was aware that Kelly's claim "was worth more than $50,000." He also testified that there was a probability that a trial of the· Kelly personal injury suit would result in the rendition of an excess judgment. In fact, Clark recommended to Miller by letter dated October 11, 1978, that Allstate tender its policy limits into court and continue the defense of the case. Allstate, acting by and through its attorney Clark, offered its policy limits of $50,000 to Kelly on December 4, 1978, provided a release was furnished from both Sandra and Joe Kelly, or provided that Kelly and her attorney, Jerry Calhoon, "will indemnify Allstate against any claim made by Mr. Kelly." Later, on January 16, 1979, Clark, on behalf of Allstate, offered the policy limits to Kelly to settle her claim without imposing the previous conditions. Such offer was rejected by Kelly.

## THE PLEADINGS

Alves pleaded a general cause of action under the DTPA, and by trial amendment specifically pleaded "that Allstate failed to

inform them [the Alves] about its evaluation of the Sandra Kelly claim, settlement offer made by Kelly and the risk to the Alves if such settlement offer was not accepted." That such conduct constituted negligence and gross negligence and violations of statutory law. In addition to such pleading, Alves also asserted that Allstate and Miller were guilty of negligence and gross negligence in failing to accept Kelly's offer of settlement within the policy limits and sought actual, punitive and treble damages. Alves further sought relief under TEX.INS.CODE ANN. art. 21.21 Sections 4 and 16 (Vernon 1981).

## JURY FINDINGS

The jury found that Allstate failed "to settle the claim of Sandra Kelly"; that such failure constituted both negligence and gross negligence; and that such failure was an unfair practice and an unconscionable course of action which proximately caused the entry of the judgment against the Alves. The jury also found that Allstate failed to inform its insured of (1) their evaluation of Sandra Kelly's claim, (2) her offer to settle within policy limits, and (3) the risk to the Alves if the offer of settlement was not accepted. The jury also found that such failure to inform constituted negligence and gross negligence, was an unfair practice, an unconscionable course of action and was false, misleading and a deceptive practice which proximately caused the entry of the judgment against the Alves. Additionally, the jury concluded that Allstate represented to the Alves "that it was not necessary for them to hire a lawyer" and that this representation was false, misleading, a deceptive trade practice, and an unconscionable course of action which adversely affected the Alves and was a proximate cause of the entry of the judgment. Finally, the jury concluded that Allstate was not attempting in good faith to settle the Kelly claim in a prompt, fair and equitable manner and that such failure was a proximate cause of the entry of the judgment.

The jury found that Miller was negligent in his conduct "concerning the settlement of ... Kelly's claim," and this conduct proximately caused the entry of the judgment against the Alves. In addition, the jury made affirmative answers to the following special issues:

## SPECIAL ISSUE NO. 32

Was any mistake on the part of Allstate Insurance Company or their attorney, Charles Clark, as to any right to maintain a suit or claim on the part of Joe Kelly the result of a bona fide error or mistake, if any?

Answer: 'Yes' or 'No'

Answer: Yes.

If you have answered Special Issue No. 32 'Yes,' then answer Special Issue No. 33.

## SPECIAL ISSUE NO. 33

Was such bona fide error a producing cause of the failure, if any, of Sandra Kelly's case to be settled?

Answer: 'Yes' or 'No'

Answer: Yes.

## THE DTPA CAUSE OF ACTION

Sections 17.46 and 17.50 of the DTPA Acts 1977, 65th Leg. (regular session) ch. 216 secs. 2, 3 and 5 Texas General Laws 600–604, read in pertinent part:

*Sec. 17.46, Deceptive Trade Practices Unlawful*

(a) False, misleading or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) The term false, misleading or deceptive acts or practices includes, but is not limited to the following acts: [here follows 'laundry list' of twenty-one acts and practices] ....

*Sec. 17.50*

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

(1) The use or employment by any person of an act or practice declared to be

unlawful by sec. 17.46 of this subchapter [E]. . . .

(3) Any unconscionable action or course of action by any persons; or

(4) The use or employment by any person of an act or practice in violation of art. 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under art. 21.21, Texas Insurance Code, as amended.

. . . .

Allstate contends by its tenth point of error that there is no evidence, and alternatively, insufficient evidence to support the award of treble damages. Allstate argues in effect that neither the DTPA nor the Texas Insurance Code provides a private cause of action in a Stowers Doctrine case. Allstate also makes a nonspecific argument which is understood by us as contending that the evidence is factually and legally insufficient to support the jury findings in response to Special Issues 1 through 17a inclusive. Allstate contends that its failure to inform the Alves of the November 1978 settlement offer made by Kelly, its evaluation of Kelly's claim, and the risk of non-settlement were not unconscionable acts as defined by the DTPA. Allstate bottoms this conclusion on the holding of the Texas Supreme Court in *Royal Globe Ins. Company v. Bar Consultants,* 577 S.W.2d 688 (Tex.1979), that "post-loss" representations made by a local recording agent of Royal Globe could not have factually caused injury to the plaintiff in that case. Allstate also couches its argument on the thesis that the Alves could not have compelled Allstate to settle within policy limits; therefore, the failure to inform the Alves could not have been a producing cause of the entry of the excess judgment in the personal injury suit. Additionally, Allstate claims in its argument that the jury's answers to Special Issues 32 and 33 [2] establishes Allstate's affirmative defense of

bona fide error [3] which precludes the award of either treble or exemplary damages.

In its reply brief, Allstate states that the time limited offer of settlement made by Kelly was not "too short for Allstate to determine whether or not it would pay its limits, since it clearly did so determine," but argues that the allowed time "was inadequate[°] . . . to resolve the matter of the potential claims of Mr. Kelly." Essentially this is the same argument made in Allstate's original brief before this court under its seventh point of error, and we will discuss such contention later in this opinion upon our consideration of that point.

In support of its position that the DTPA does not confer a cause of action in a *Stowers* case, Allstate cites, among others, *Rosell v. Farmers Texas County Mutual Ins. Co.,* 642 S.W.2d 278 (Tex.App.—Texarkana 1982, no writ). Our research reveals that *Rosell* is the only decided case in Texas that even addresses the issue as to whether the provisions of Section 17.41, et seq., of the DTPA provide a remedy to the insured in a *Stowers* suit. The appeal in *Rosell* was from a take-nothing summary judgment rendered against Rosell. The underlying personal injury suit had been brought by Rosell individually and as next friend for her daughter, Alicia, who had been struck by a vehicle operated by Donald Wood, son of Jerry Wood who had theretofore purchased an automobile liability policy from Farmers providing limits of liability of $10,000 per person and $20,000 per occurrence. Before the trial of the damage suit, Farmers offered to settle the claims of Alicia for its per person policy limits of $10,000, and the claim of Rosell for $5,000. Rosell refused this offer and made a counter offer to settle both claims for $20,000. Farmers rejected the counter offer, and Rosell secured an assignment from Donald Wood, the sole judgment debtor, of any and all claims he had against Farmers because of its refusal to settle the claims of Rosell and Alicia for Farmers per occurrence policy limits of $20,000 and

---

**2.** Set out on page 601 of this opinion.

**3.** Section 17.50(A) DTPA, Acts 1977, 65th Leg., Ch. 216, Sec. 6, Tex.Gen.Laws 604.

brought suit which went to trial before a jury. The jury awarded Alicia $55,000 actual damages and awarded Rosell $5,625 actual damages.

The opinion in *Rosell* neither discusses nor reveals the grounds of Farmers' motion for summary judgment, nor the summary judgment evidence produced before the trial court, but holds outright as a matter of law that Rosell had "no cause of action against Farmers." *Id.* 279. Our sister court unanimously concluded that Rosell was not a "consumer" under the DTPA because neither she nor her assignor Donald Wood, an additional insured under the liability policy, acquired the services of Farmers by purchase of the liability insurance policy. That court further stated, "Even if he [Donald Wood] were a consumer, any post-sale conduct of an insurer is not conduct occurring in connection with the purchase of goods or services." In his discussion of the Stowers cause of action, Justice Hutchinson concluded that Farmers was not guilty of negligence in failing to pay its full per occurrence limits of $20,000 in settlement of both claims because while Alicia's claim resulted in an excess judgment, Rosell's claim resulted in a judgment within the per person limits of $10,000. The Texarkana court cited in support of its rulings on the Stowers action, *Clark v. Hartford Indemnity Co.*, 61 Tenn.App. 596, 457 S.W.2d 35 (1970), and *Standard Accident Ins. Co. of Detroit, Michigan v. Winget*, 197 F.2d 97 (9th Cir.1952). A reading of those cases reveals that the Texarkana Court held in effect that since Farmers had in fact offered before trial its full (per person) policy limits in an attempt to settle Alicia's claim, and since Rosell's award of damages by the judgment was within Farmers' per person policy limits and was paid, Farmers was not guilty of any negligence in failing to accept the "package" offer to settle both claims for $20,000. In all events, the holding in *Rosell* that conduct of an insurer occurring

after the purchase and delivery of an insurance policy cannot form the basis of a cause of action under DTPA is clearly erroneous. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *see also Leal v. Furniture Barn, Inc.*, 571 S.W.2d 864, 865 (Tex. 1978). Likewise, similar holdings or dicta found in *Hartford Casualty Ins. Co. v. Carroll*, 575 S.W.2d 578 (Tex.Civ.App.— Beaumont 1978, no writ), and *American Ins. Companies v. Reed*, 626 S.W.2d 898 (Tex.App.—Eastland 1981, no writ), have been impliedly overruled or disapproved by the Supreme Court in its opinion in *Flenniken, supra.* Under the Supreme Court opinions cited above, we conclude that Alves is a consumer in this action because she acquired services from Allstate by the purchase of the liability insurance policy [4] and is asserting complaints arising out of that policy.

As a consumer Alves is entitled to assert a cause of action under Sections 17.46(a) and 17.50(a)(3)(4) respecting the conduct of Allstate in its handling of the claim of Kelly against her.

Allstate further argues that even if Alves has a cause of action under either Sections 4 or 16 of art. 21.21, TEX.INS. CODE ANN. or the DTPA, treble damages should not have been awarded because if Allstate is required to pay the excess judgment amount, then Alves has no "actual damages [resulting from the claimed misconduct] which are ... subject to being tripled." Allstate cites *Connecticut General Life Ins. Co. v. Stice*, 640 S.W.2d 955 (Tex.App.-Dallas 1982, writ ref'd n.r.e.), in support of this proposition. Since the Supreme Court refused application for writ of error in *Stice* with a notation "no reversible error," we have carefully studied the facts and issues presented for decision in that case. In *Stice*, the plaintiff was the sole beneficiary in an accidental death poli-

---

**4.** A policy of insurance constitutes services within the meaning of § 17.45(2). *Dairyland County Mutual Ins. Co. v. Harrison*, 578 S.W.2d 186 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). Also impliedly so held, *Royal Globe Ins. Co. v. Bar Consultants*, 577 S.W.2d 688 (Tex. 1979).

cy issued by Connecticut General to her deceased husband who suffered a broken hip in a fall occurring after the policy was in force. Following surgical repair of the fracture, Mr. Stice, who had a medical history of chronic cirrhosis of the liver, suffered an infection in the wound, his condition worsened, and he died. The group policy in question was made available by Connecticut General to the employees of American National Insurance Company and their families. Mrs. Stice was an employee ·of American National Insurance Company. Connecticut denied liability on Stice's claim, asserting that Mr. Stice's death did not result, independent of all other causes, from an accidental injury. Mrs. Stice brought suit for the policy proceeds thereof against Connecticut General, and under the pleadings and the coverage clause in the policy, Stice had the burden to prove that the accidental injury, independent of all other causes, caused her husband's death. Based on the evidence the jury found that the death was caused by the accidental injury, and the trial court rendered judgment against Connecticut General for the policy proceeds. The Court of Civil Appeals overruled Connecticut General's evidentiary points assailing such finding and affirmed that portion of the judgment.

Stice also·sued American National alleging violations of Section 4(1) and (2) of art. 21.21, Texas Insurance Code, as well as Section 17.46(b)(5), DTPA (Vernon Supp. 1982) (unchanged since original enactment in 1973). Stice alleged that American National, in a brochure circulated among its employees before the issuance of the accidental death policies by Connecticut General, misrepresented an exclusionary clause that the issued policies would contain and that the exclusionary clause actually contained in the policy was more restrictive than the one forecast by the brochure description. The two clauses were footnoted in the opinion and a simple analysis of them reveals that they are virtually identical. Moreover, no jury issue was submitted embodying the exclusionary clause existing in the policy. Thus, it is quite obvious that there was no misrepresentation by Ameri-

can National respecting the exclusionary clause as a matter of law, and we strongly suspect that the Supreme Court's refusal of the writ of error in *Stice* with the notation "no reversible error" rests not on the Dallas court's erroneous conclusion that because Stice recovered the policy proceeds in the lawsuit against Connecticut General that she had no actual damages resulting from Connecticut General's denial of liability, but rather on the facts establishing as a matter of law that American National did not misrepresent the provisions of the policy's exclusionary clause to be incorporated in the policy. In any event, we reject as erroneous and meritless the argument of Allstate that if Alves *recovers her actual damages*, she has not been damaged so as to authorize recovery of treble damages in this case.

## INSURANCE CODE ACTION

The pertinent provisions of TEX.INS. CODE ANN. Section 21.21 (Vernon 1981) read as follows:

### Article 21.21 Unfair Competition and Unfair Practices

#### Declaration of purpose

Section 1. The purpose of this Act is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, 79th Congress), by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

### RELIEF AVAILABLE TO INJURED PARTIES

Section 16. (a) Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the [State] Board [of Insurance] under this Article to be unfair

methods of competition *and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.* (Emphasis added.)

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorneys' fees....

 Under the pleadings Alves sought relief under Sections 4 and 16 of art. 21.21 of the Insurance Code and the rules and regulations of the State Board of Insurance promulgated under Section 13 of art. 21.21. No issue was submitted, however, which is directly referable to any subdivision of Section 4, and therefore we will not further address such section. Section 16 clearly provides that a cause of action for treble damages may be brought by any *person* who has been injured by another's acts and conduct amounting to "unfair and deceptive acts or practices in the business of insurance" as declared in the lawfully promulgated rules and regulations of the State Board of Insurance, or "in any practice defined by Section 17.46" of DTPA "as an unlawful deceptive trade practice." The Supreme Court in its analysis of Section 16, as set forth in *Royal Globe Ins. Co. v. Bar Consultants*, 577 S.W.2d 688 (Tex.1979), stated that the third definition of a deceptive trade practice *incorporated* into art. 21.21, Section 16 is found in Section 17.46 of the DTPA. Subsection (a) of Section 17.46 declares unlawful "[f]alse, misleading or deceptive acts or practices in the conduct of any trade or commerce." The Supreme Court in *Royal Globe* expressly recognized that Section 16 of art. 21.21 confers a cause of action under Section 17.46(a) of the DTPA independent of DTPA. *See also Hiline Electric Company v. Travelers Ins. Companies*, 593 S.W.2d 953, 954 (Tex. 1980). Allstate contends that Section 16 of art. 21.21 provides no cause of action for violation of 17.46(a), but only for acts or

practices set forth in 17.46(b) and cites in support of its contention, *Mobile County Mutual Ins. Co. v. Jewell*, 555 S.W.2d 903 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.), *per curiam*, 566 S.W.2d 295 (Tex.1978). In that case the court construed the language of Section 16 of art. 21.21 to limit the cause of action thereunder as to Section 17.46 of the DTPA to the acts and practices set forth in Section 17.46(b). The comment of the court to that effect was pure dicta because that court had already correctly held that the provisions of Section 16 of art. 21.21 were not applicable to county mutual insurance companies. *Id.* 910. The Supreme Court refused an application for writ of error in *Jewell* with the notation "no reversible error" for that very reason. *Jewell v. Mobile County Mutual Ins. Co.*, 566 S.W.2d 295 (Tex.1978). We respectfully disagree with the conclusion, by way of dicta, of the El Paso court and hold that Section 16 of art. 21.21 of the insurance code confers a cause of action for treble damages in accordance with the provisions of Section 17.46(a) which, as the Supreme Court has already held, are properly incorporated in Section 16 of art. 21.21. We further hold that Section 16 also provides a private cause of action to Alves here for "unfair and deceptive acts or practices" committed by Allstate in the handling of Kelly's claim against Alves.

### Double Damage Issue

Allstate in its first point of error complains of the recovery by Alves of both treble and exemplary damages for the same conduct, and cites in support thereof *Riverside National Bank v. Lewis*, 572 S.W.2d 553 (Tex.Civ.App.—Houston [1st Dist.] 1978), *aff'd in part, rev'd and remanded in part, and rev'd and rendered in part*, 603 S.W.2d 169 (Tex.1978); *Charlie Thomas Courtesy Ford v. Avalos*, 619 S.W.2d 9 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); and *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926 (Tex.Civ.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

A reading of the opinions delivered during the stormy journey of *Riverside, supra,* through the appellate system leads us to conclude that the statement in the original opinion of the Houston Court of Civil Appeals, that Lewis was not entitled to recover both treble and exemplary damages for the same act because such amounts to a double recovery of punishment damages, is but obiter dictum. Such statement was so regarded by the Supreme Court.[5] However, in *Charlie Thomas Courtesy Ford v. Alvalos, supra,* the Court of Appeals citing *Riverside,* 572 S.W.2d 553, *supra,* did hold that the plaintiff there could not recover both exemplary and treble damages based on the same conduct of the defendant because such a recovery amounted to an improper double recovery of punishment damages. We conclude that the rule advocated by the Houston Court of Civil Appeals in its original opinion in *Riverside, supra,* and applied in *Avalos, supra,* is sound and just.[6]

In this case no actual damage issue was required to be submitted because the actual damages sustained by the Alves under each cause of action asserted herein were fixed as a matter of law in the amount of the excess of the judgment rendered against her in favor of Kelly over the applicable policy limits in Allstate's policy. Although in our case it might be argued, as indeed it is by Alves, that because the verdict contains multiple findings of deceptive acts and practices, as well as several findings of negligent conduct on the part of Allstate, both treble and punitive damages should be recoverable herein. Such an argument, however, overlooks the fact that the jury also found that each deceptive act or practice, as well as each act of negligence, was a proximate cause or a producing cause of the same damages. It is axiomatic that exemplary damages cannot be awarded in the absence of establishment of actual damages. Thus, on the facts in this case the award of exemplary damages was necessarily predicated on the same damages which were trebled on the basis of the findings by the jury of the violations of the DTPA and Section 16, art. 21.21 of the Insurance Code. Under this record, therefore, we conclude that the award in the judgment of both treble and exemplary damages cannot stand because it does amount to a double recovery of punishment damages by the Alves resulting from the same acts or conduct. *Charlie Thomas Courtesy Ford v. Alvalos, supra; Riverside National Bank v. Lewis, supra,* (572 S.W.2d 553); and *Butler v. Joseph's Wine Shop, Inc., supra.* Allstate's first point of error is sustained.

### ALLSTATE'S SECTION 17.50A DEFENSE

Before we address the evidentiary points raised by Allstate, we deem it expedient to consider that portion of Allstate's eleventh point of error under which Allstate contends that the findings made by the jury in response to Special Issues 32 and 33[7] preclude recovery of treble damages. Alves argues that the findings embodied in the issues are immaterial in view of the other findings of the jury, and that the trial court correctly disregarded them. We agree. The bona fide error defense applies only to clerical errors, and therefore, has no application in this case as respects the causes of action asserted under DTPA. Section 17.50A, DTPA; *Stendebach v. Campbell,* 665 S.W.2d 557 (Tex.App.—El Paso, 1984, writ ref'd n.r.e.). No such defense exists to the cause of action asserted by Alves under TEX.INS. CODE ANN. art. 21.21 Section 16 (Vernon 1981). Additionally, Allstate contends that such findings "negatives conscious indifference as to the punitive damages claims." If such contention is sound, then Allstate is, in reality, claiming that a fatal conflict

---

5. See opinion 603 S.W.2d at 172 wherein the Supreme Court enumerates the holdings of the Court of Civil Appeals.

6. Section 17.43, DTPA, as amended in 1979 codifies the rule in *Avalos.* See TEX.BUS. & COM. CODE ANN. § 17.43 (Vernon Supp.1984).

7. See page 601 of this opinion.

exists between the findings made by the jury in response to Special Issues 32 and 33, and the jury findings of gross negligence under Special Issues 3 and 9 on the part of Allstate in failing to settle Kelly's claim, and in failing to inform Alves of Kelly's offer of settlement within policy limits, its evaluation of the claim and the risk to Alves involved in the rejection of the offer of settlement.

In this case, the jury found in response to Special Issue 3 that Allstate's failure to settle the claim of Kelly constituted a heedless and reckless disregard of Alves' rights. The jury also found in response to Special Issue 9 that the failure of Allstate to inform the Alves of its evaluation of Kelly's claim, Kelly's settlement offer, and the risk to Alves if such offer was not accepted, constituted a heedless and reckless disregard of Alves' rights. The definition of "heedless and reckless disregard" in each of these issues followed Section 3.11, Pattern Jury Charge, verbatim. This definition was approved by the Supreme Court in *Burk Royalty Company v. Walls*, 616 S.W.2d 911 (Tex.1981).

 From our consideration of the evidence and pleadings, and the jury's answers to Special Issues 32 and 33, we conclude that the "bona fide error or mistake" made by Allstate, as found by the jury in Special Issue 32, which the jury found to be a "producing cause of the failure … of Sandra Kelly's case to be settled," was a unilateral mistake of law by Allstate, not in any manner brought about by Alves. The record shows that Alves was unaware that the settlement offer had been made until more than two months after the offer was withdrawn. Apparently, Allstate, at least during the period of the settlement offer, was ignorant of the provisions of TEX. FAM.CODE ANN. Section 5.22 (Vernon 1974), the cases construing it, as well as the decision in *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978). Allstate argues that it was not even guilty of negligence, much less gross negligence, in failing to settle. Allstate argues that it offered its policy limits to Kelly conditioned upon being furnished a release from Kelly's husband, Joe Kelly, for his possible claims for various community property elements of damages recoverable and arising out of Kelly's injuries, i.e., loss of past wages, diminishment of Kelly's future earning capacity, and various medical and hospital bills, as well as for Joe Kelly's independent right of recovery for loss of consortium and mental anguish, in order to protect the Alves. Allstate argues that under the facts and findings, Allstate in good faith failed to settle Kelly's claim without a release from Joe Kelly which, in their view of the law, was required to foreclose Joe Kelly's assertion of a claim against the Alves, thus Allstate was not acting "in conscious disregard" of Alves' rights and welfare. In other words, Allstate contends, that assuming that its understanding of the law at the time was erroneous (as indeed Special Issue 32 does assume), such understanding nevertheless formed the basis for its action in refusing the offer and negated the existence of the mental state required to demonstrate that it acted in "heedless and reckless disregard" in so doing. We reject such contentions. The records shows that in July, 1978, while Kelly was in a Dallas hospital, Joe Kelly, her husband, absconded with the family bank account and the family car and deserted Kelly; and that his whereabouts was unknown to Kelly. Such facts were revealed to Allstate by the deposition testimony of Kelly in September of 1978. Allstate was also at that time fully apprised of the grave nature of Kelly's injuries, i.e., vision loss and impairment and partial paralysis, as well as the medical expenses incurred which were in excess of $13,000.00, and that the liability of Alves was reasonably clear. Under these facts, and assuming that Allstate held a *correct* view of the law respecting Joe Kelly's rights of recovery for the injuries to his wife, the jury was certainly justified in concluding under the evidence, as it did, that the conduct of Allstate in refusing the settlement offer and in failing to inform the Alves thereof, constituted a "heedless and reckless disregard" of Alves' rights and welfare. In this regard, it must be

remembered that Allstate's posture at trial was that it rejected the offer in order to protect Alves, even though it never even consulted Alves about the offer, the risk to Alves if the offer was rejected, and the reasons given for rejection. Allstate's actions and conduct in failing to inform the Alves of such offer, such risk, and the reasons for its rejection, operated to deprive the Alves of their right to make a choice between defending against Kelly's claim and cause of action for her personal injuries, which admittedly would probably result in a judgment in favor of Kelly in an amount far in excess of the policy limits, or settling her claim for policy limits, and defending against the cause of action brought by Joe Kelly, if any, for loss of consortium, mental anguish, etc., which was demonstratively of far less value. Under our view of the record, the answers of the jury to Special Issues 32 and 33 are immaterial, thus not in fatal conflict with the findings of the jury favorable to Alves embodied in Special Issues 3 and 9.

### EVIDENTIARY POINTS

 Under its fifth and sixth points, Allstate, in its original brief, contended that there is no evidence to support the findings of negligence and gross negligence because the fourteen-day term of the offer to settle was too short in duration to enable Allstate "to communicate between different echelons of a nationwide corporation the complications concerning the possible claims of Mr. Kelly as a matter of law and did not give Allstate a reasonable opportunity to resolve the questions of potential claims by Mr. Kelly and then consider, investigate and discuss the offer and act on it." However, in its later reply brief, Allstate admits that the fourteen-day period during which the settlement offer was open was not too short for it to evaluate Kelly's claims, but was "inadequate ... to resolve the matter of the potential claims of Mr. Kelly." Allstate, in support of such contention, refers to the evidence showing "that Joe and Sandra Kelly were husband and wife, living together at the time of Kelly's injuries; that Joe Kelly initially em-

ployed Calhoon; that the first medical hospital bills were sent to Joe Kelly; that Joe Kelly was also a passenger in the car in which Kelly was riding; [and] that Allstate did not learn until November 22, 1978, that Calhoon was not representing Joe Kelly." In its reply brief, Allstate again asserts that Joe Kelly had "a potential claim" for the medical and hospital services furnished Kelly since this was a community debt, as well as a claim for loss of consortium, and, for the first time, that Joe Kelly had a claim for mental anguish from witnessing his wife's injuries in the "zone of danger." These arguments ignore the facts that Joe Kelly brought no action against Alves, deserted his wife, that policy limits were authorized to be paid to Kelly on November 9, 1978, and that Allstate became aware in September of 1978 that even Kelly did not know the whereabouts of Joe Kelly. We conclude under the facts and circumstances here, that the duration of the settlement offer made by Kelly was not unreasonably short, so as to relieve Allstate of its obligations under the Stowers Doctrine, or permit it to escape liability for its conduct found by the jury to be in violation of DTPA and Section 16, Article 21.21, TEX.INS.CODE. From a careful review of all the evidence, we hold that the evidence is sufficient to support the jury's findings of negligence; gross negligence; unfair practice; unconscionable action; false, misleading and deceptive acts or practice; and the corresponding findings of proximate and producing cause in Special Issues 1 through 13 inclusive, and that such findings support the judgment entered for actual, exemplary and treble damages against Allstate. We also hold that the evidence is sufficient to support the findings of negligence on the part of Miller made by the jury in Special Issue 22. Allstate's points 5, 6, 7, 8, 9, 10 and 11 are overruled, except as to the findings of the jury embodied in Special Issues 14, 15, 16, 17 and 17A, wherein the jury found that Allstate represented to Alves, "that it was not necessary for them to hire a lawyer [in the personal injury suit]," and that such representation consti-

tuted a false, misleading or deceptive practice, an unconscionable action which adversely affected Alves, and was a proximate cause of the entry of the excess judgment (in the personal injury suit). Such points of error are sustained as to those findings because there is no evidence in this record that Clark, an experienced trial lawyer, failed to provide Alves with competent legal services in defense of Kelly's suit. Such enumerated points, as to findings included in Special Issues 14 through 17A, are sustained.

## THE PRE–TRIAL AGREEMENT OF KELLY AND ALVES

### (Allstate's Points 3 and 4)

 Under point three, Allstate claims that the trial court erred in refusing to permit its trial counsel to call Alves' counsel in this suit under the adverse party rule; and under point four, Allstate contends that the trial court erred in entering judgment against Allstate for the excess judgment because of the written agreement existing between Kelly and Alves at the time this Stowers Doctrine suit went to trial. That agreement reads as follows:

"July 26, 1979
Mr. Jerry Calhoon
608 E. Crawford
Palestine, Texas 75801
Dear Jerry:
Please find enclosed a written proposal regarding the Kelly, Alves and Alstate (sic) case. After you have had a chance to review same and discuss it with your client, please let me hear from you.
Yours very truly,
SWIFT, SWIFT, & LAWRENCE
By: Dick Swift
DS/bc
Enclosure

### PROPOSAL TO JERRY CALHOON

We would propose as follows:
1. That you and your client would receive ⅔ of the net amount of money recovered from Allstate, if any, and that this would be split between you and her ⅓ and ⅔ respectively. This might mean that you would have to renegotiate your contract with your client.
(Example: Recovery of $471,000.00 would leave you and your client $314,-000.00 which breaks down to $104,-667.00 to you and the balance to her.)
2. Our law firm would employ an expert that we, both your firm and ours, could agree on and he would be compensated out of our ⅓.
3. Our firm would file the suit in Anderson County District Court and your firm and our firm would advance the court costs and expenses of litigation, regardless of what Court it wound up in, equally. If no recovery, then we each would wind up paying ½ of all expenses.

Agreed to and approved
(hand-written)
/s/ Sandra Kelly
/s/ Jerry L. Calhoon"

At the outset, we note, that while the trial judge did formally deny Allstate the right to call Dick Swift, one of the attorneys representing Alves, at the trial of this suit under the adverse party rule, he did permit Allstate to lead and cross-examine Swift concerning such agreement. Under the record here, it is clear that Swift was a party with an adverse interest. He had an interest in the outcome of this suit before the jury. The trial judge committed error in refusing Allstate's request. The thrust of Allstate's cross-examination of the witness was to prove up the agreement between Kelly and Alves, as set out above, and to secure its introduction in evidence before the jury. Allstate was successful in so doing. Allstate argues that under the court's ruling it could not question Swift "as to the purpose, meaning and effect of the agreement without having to vouch for anything he might say," and infers that somehow the jury was misled by the written agreement. Allstate does not demonstrate how the jury was misled by such events and evidence. The agreement is not ambiguous, and Allstate does not so contend. The heart of Allstate's argument

under its fourth point is that the agreement transferred to Alves one-third of the judgment against her, thereby casting Alves in the role of her own creditor, and to such extent therefore brought about a merger which extinguishes one-third of the judgment. Allstate further contends that the terms of the agreement give rise to a necessary implication that Kelly will never attempt to satisfy the judgment by the levy of execution against Alves' properties. Both contentions lack merit. The agreement is simple and unambiguous. Under its provision, Alves assigned two-thirds of her cause of action against Allstate to her judgment creditor, Kelly, with an agreement to share certain expenses. This she had a right to do. *McCloskey v. San Antonio Traction Co.*, 192 S.W. 1116, 1119, 1120 (Tex.Civ.App.—San Antonio 1917, writ ref'd); *Galveston H & S A Railroad Co. v. Ginther*, 96 Tex. 295, 72 S.W. 166 (1903); *Fort Worth & Denver Railroad Co. v. Ferguson*, 261 S.W.2d 874 (Tex.Civ.App.— Ft. Worth 1953, writ dism'd); *Friedman v. Martini Tile & Terrazzo Co.*, 298 S.W.2d 221 (Tex.Civ.App.—Ft. Worth 1957, no writ).

We hold that such assignment of the causes of action extends not only to the negligence and gross negligence causes of action, but to any cause of action provided by DTPA and Section 16, Article 21.21, TEX.INS.CODE.

The record shows that no instructions were requested to be given the jury respecting the meaning or effect of the agreement, and it was not necessary to do so. We conclude that the jury was not misled in any respect by the agreement as to the posture of Alves and Kelly at trial. Indeed, it was clear from the facts and circumstances before the jury that Alves and Kelly had a mutual interest in recovering a judgment against Allstate in this suit. Allstate's points 3 and 4 are overruled. TEX.R.CIV.P. 434.

### THE TRIAL AMENDMENT

■ Allstate, by its second point, contends that the trial court erred in permitting a post-verdict trial amendment by Alves to her pleadings raising the amount of punitive damages sought from $500,-000.00 to $800,000.00. We do not agree. There is a host of cases upholding the trial court's right and discretion to permit post-verdict trial amendments to pleadings. Among these cases are *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 759 (Tex.Civ.App.—San Antonio 1977, no writ); *Tom's Toasted Peanuts, Inc. v. Doucette*, 469 S.W.2d 399, 402 (Tex.Civ.App.— Beaumont 1971, writ ref'd n.r.e.); *Irwin v. Whirley*, 538 S.W.2d 150 (Tex.Civ.App.— Waco 1976, no writ); *Fenno v. Jacobe*, 657 S.W.2d 844, 848 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In each of these cases, the trial court's action in permitting a trial amendment to be filed to conform the pleadings to the amount of damages found by the jury was upheld. Based on the record before us, we have concluded that Allstate has not demonstrated that the trial court abused its discretion in permitting the trial amendment which conforms Alves' pleadings to the amount of exemplary damages found by the jury, and we decline to follow the holding [8] in *Burk Royalty Co. v. Walls*, 596 S.W.2d 932, 938 (Tex.Civ.App.—Fort Worth 1980), *aff'd*, 616 S.W.2d 911 (Tex.1981), to the effect that TEX.R.CIV.P. 67 precludes the filing of a post-verdict trial amendment to enlarge the *amount* of exemplary damages to conform with the jury finding. Allstate's second point of error is overruled.

### POST–JUDGMENT INTEREST ISSUE

By its twelfth point of error, Allstate contends that the trial court erred in trebling post-judgment interest on Kelly's judgment. The contention is that the "actual damages" of Alves under Section 17.-50, DTPA, is limited to the amount of the original judgment, $521,453.57. In other words, Allstate argues that such post-judgment interest is actually pre-judgment interest in this case and should not have been

---

**8.** Not challenged in the Supreme Court.

trebled by the judgment below. In support of this argument, Allstate cites *Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455, 463 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In *Rotello,* a DTPA suit, the Houston Court first held that the Rotellos (plaintiffs) were entitled to receive pre-judgment interest as a part of their damages for a crop loss, and then rejected Rotellos' contention that such interest is a part of the actual damages subject to being trebled under DTPA. Our Supreme Court has defined the term "actual damages" as used in Section 17.50, DTPA, as meaning damages which are recoverable at common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Our research reveals that the Supreme Court refused the Rotellos' application for writ of error on their sole point before it and the Houston Court of Civil Appeals with the notation, no reversible error. We assume, therefore, that even pre-judgment interest recoverable at common law as an element of a plaintiff's damages is now excluded from the definition of actual damages for the purpose of trebling under the DTPA on unliquidated damages cases, and that the definition of "actual damages" in *Brown v. American Transfer & Storage Co., supra,* is so modified. Nonetheless, we view *Rotello* as not controlling here. A careful reading of the opinion in *Stowers, supra,* reveals that Stowers sued its insurer, American Indemnity Company, for $14,107.15, including *interest and court costs.* The Commission of Appeals in reversing both lower courts in *Stowers,* stated, "We are of the opinion that the plaintiff's petition states a cause of action ... for the amount sued for...."

 At the time of the entry of the judgment in favor of Kelly against Alves on April 20, 1979, Article 5069–1.05 Acts 1975, 64th Leg., Ch. 288, Sec. 1, Texas General Laws 730, provided that judgments "shall bear interest at the rate of nine percent (9%) per annum from and after the date of the judgment." The post-judgment interest on Kelly's judgment on the date of

the entry of the judgment in this case amounted to some $110,000.00. We conclude that under the holding in *Stowers, supra,* and *Brown, supra,* that post-judgment interest on Kelly's judgment constitutes "actual damages" under Section 17.50, DTPA, as well as Section 16, Article 21.21, TEX.INS.CODE, and the trial court did not err in trebling the amount of post-judgment interest due on Kelly's judgment as of December 17, 1981. Allstate's twelfth point of error is overruled.

## OPINION TESTIMONY

We now address Allstate's points 13 and 14 under which it complains of the trial court's action in permitting legal expert opinion as to the state of the law in Texas as existed during the month of November 1978 regarding a husband's right of recovery for loss of consortium resulting from personal injuries to his spouse, and regarding claims existing in favor of the husband arising out of the right of recovery for certain community property elements of damages resulting from such injuries, such as medical and hospital expense, loss of wages, etc.

Allstate contends that the trial court erred in permitting lawyer witnesses produced by Alves to render legal opinions over its objections regarding the state of the law in this State as to whether a husband had an independent right of recovery for loss of consortium with his wife resulting from personal injuries sustained by the wife and caused by the negligence of a third party, and whether the husband had a cause of action in his own right to recover necessary and reasonable medical and hospitalization expenses incurred in the treatment of his wife's personal injuries. Under point 14, Allstate complains of the trial court's action in permitting over its objection lawyer witnesses produced by Alves to render opinions on "ultimate jury issues such as duty and negligence."

The record reveals that both parties presented expert witnesses (lawyers), each of whom was examined and strenuously

cross-examined by trial counsel. Alves' legal experts testified in effect that Joe Kelly had no right of recovery for loss of consortium and discussed in their testimony the Supreme Court's decision in *Whittlesey v. Miller, supra*, as the basis for their opinions. Alves' expert witnesses also testified that Sandra Kelly had sole authority under TEX.FAM.CODE ANN. Section 5.22 (Vernon 1974) to settle any and all claims for medical and hospital expenses incurred, as well as all claims for her loss of wages and future earning capacity resulting from her personal injuries. Allstate's lawyer witness, Clark, testified that Kelly had authority to settle and effectively release claims for recovery of community property elements of damages, but testified that in his opinion, Joe Kelly had a claim for loss of consortium. Ralph Zelesky, another lawyer witness produced by Allstate, testified, in effect, that Kelly's release alone would not bar Joe Kelly from bringing suit to recover for community property elements of damages created by the medical and hospital services furnished Kelly in the treatment of her personal injuries. Allstate made numerous objections which were overruled by the trial court to the legal conclusions and opinions rendered by the Alves' lawyer witnesses regarding the provisions of the Family Code and case law relating to Kelly's authority, acting alone, to settle all claims arising out of her personal injuries including community property elements of damages and respecting Joe Kelly's right of recovery for loss of consortium. Allstate also objected to questions propounded to Alves' legal experts seeking to elicit opinions as to whether certain conduct of Allstate constituted negligence and opinions as to whether Allstate had a duty to inform Alves of Kelly's settlement offer.

We have concluded from a careful reading of the testimony of all expert witnesses who testified in this case, that any error committed by the trial court in overruling Allstate's objections to such legal conclusions and opinions was waived by Allstate in two ways. First, Allstate cross-examined Alves' legal experts and brought out the same conclusions and opinions which were the subject of their objections on direct examination of the witness. Second, the same expert witnesses, on direct examination, both before and after the objections were made, rendered substantially the same opinions and conclusions without objection on the part of Allstate. In addition, Clark, Allstate's witness, admitted on cross-examination without timely objection from Allstate, that Kelly acting alone had power and authority to grant a release for any recovery which included elements of damages of community property character resulting from her personal injuries. Points 13 and 14 are overruled.

Allstate contends under its point of error 15 that the trial court erred in permitting testimony about Kelly's financial difficulties. Our review of the record reveals that Allstate made no such objection to the testimony as is complained of under this point. Nothing is presented for review and the point is overruled.

The judgment of the trial court is reformed by striking the award of exemplary damages of $800,000.00, and as reformed, is affirmed.